No. 39.—LEWIS CURAN plaintiff in error, *vs.* ANDREW J. COLBERT, defendant in error.

[1.] A bill filed for injunction and discovery, and setting forth facts which entitle the complainant to relief in equity, and praying for specific relief, is an original bill ; and is not dismissed by an order taken upon the coming in of the answer, that the injunction be dissolved, and the answer be read upon the trial of the action at law.

[2.] The dismission of a levy, and the release of the property of the principal levied on, by a creditor having a judgment against principal and surety, without the privity of the surety, discharges him.

[3.] The relation of principal and surety, continues after judgment in favour of the creditor, against both principal and surety.

In Equity.—Motion to rescind order dissolving injunction, and to permit complainant to proceed to trial on the bill and answer, and the evidence taken in the cause.   Tried before Judge FLOYD. In Crawford Superior Court.   February Term, 1847.

The facts of the case, and *errors* assigned, being fully stated in

the opinion delivered by the Supreme Court, to which the reader is referred, are omitted here.

G. R. HUNTER, for the plaintiff in error.

The first prominent ground of error in this case involves simply a question of chancery practice—what is the effect of an order dissolving the injunction and directing the answer of the defendant to be read on the trial at law? The judge in the Court below held, that it would work a dismissal of the bill, and upon this ground refused to permit complainant's solicitor to proceed to trial in this cause; as there appeared an order on the minutes purporting to have been taken by solicitors for defendant, directing the dissolution of said injunction and the reading of defendant's answer on the trial at law. In this case the common law action was not enjoined. The prayer for injunction does not touch it, but seeks a decree that defendant may be enjoined from using his bill of sale on the trial of said common law action; and until a decree can be had, that the defendant be restrained from the use of said title. Neither does the bill pray a discovery from defendant, or that his answer may be read on the trial of the action at law, and that, until said answer comes in, that the common law action be enjoined. It possesses none of the features of a discovery bill merely, but is an original bill praying relief, and upon which the cause might have been carried to a hearing. *Mitf. Ch. Pl.* 65; 1 *Mad. Ch. Pr.* 194; *Dan. Ch. Pr. vol.* 1, *pp.* 238, 239.

A complainant in equity may be entitled to relief without being entitled to it through the discovery, and may then obtain a decree though he has not established his right by defendant's answer. 1 *Swan. R.* 293.

But if this were a discovery bill merely, the Court having acquired jurisdiction for the purposes of discovery, will entertain the bill for the purpose of relief. 1 *Story Eq.* 81; 1 *Kelly R.* 377, 378.

The chancellor who passed the order alluded to, doubtless acted under the impression that this bill was a discovery bill, and that the answer of the defendant being the only relief sought, the bill had performed its office. But did this order, passed under an evident misapprehension of the facts of the case, arrest the progress of the cause? It does not order a dismissal of the bill, but simply directs the injunction which had issued to restrain defendant from using his bill of sale on the trial of the common law action of tro-

ver, to be dissolved ; and further, that the answer of defendant be read on the trial at law. This order, thus mistakenly granted at the instance of defendant's *solicitors*, and without notice being given to the solicitor who prepared the bill, might have been executed without affecting in the slightest degree the right of complainant to a trial in equity upon said bill.    The cause may be heard after a dissolution of the injunction ; and no motion is necessary to retain a bill after an injunction is dissolved.    3 *Bar. & Har. Eq. Dig.* 460, 461.

Both parties treated the cause as still pending ; both proceeded to take, and did take testimony ; the pleadings were all made up regularly, the answer and replication filed, when we were met by this *ex parte* order, which the Court held had deprived chancery of its jurisdiction !    The Court below undoubtedly mistook the legal effect of this order on the rights of complainant ; nor do the entries upon the Equity docket of the Court below, sustain in the slightest degree the decision of the Court.    This Court will look only to the record of the Court below, to see what has been done in this case, and not to the docket.    1 *Kelly R.* 355.

But if said order had had the effect contended for, it was irregularly obtained, and should have been vacated.    The rules of chancery practice require, that notice of every application to the court must be given to the opposite party, or his solicitor in case he has appeared, where the motion relates to any matter pending in court, or where a final order is sought.    3 *Bar. & Har. Eq. Dig.* 513, 514; 3 *Dan. Ch. Pr.* 150, 151; *Rules of Superior Court,* 21.

Every order made in the progress of a cause may be rescinded or modified upon a proper case being made out.    3 *Dan. Ch. Pr.* 162; 3 *Eq. Dig.* 521, 522.

Orders made upon motion, are not proper subjects for a re-hearing, but may be varied or discharged, upon application by motion, either to the judge who made the order, or to the Lord Chancellor. 3 *Dan. Ch. Pr.* 66.

It thus appears from the authorities which discuss this point of chancery practice, that it was competent for the chancellor to have rescinded the order passed by his predecessor, even if it (the order) had operated to dismiss said bill, which however we do not admit. In overruling the application to rescind said order, and to permit said cause to proceed, the Court below we think committed error.

But the Court below did entertain jurisdiction of said cause

so far as to examine and hear argument upon it, and then to determine that there was no equity in said bill to support the jurisdiction of the Court; and this constitutes the next ground of error of which we complain in the decision of the Court below. It is a rule in equity, that where the powers of a court of law are not sufficient to afford a complete remedy, or their modes of proceeding are inadequate to the purpose, equity will assume jurisdiction. *Mitf. Ch. Pl.* 160, 161, 166, 167.

Chancery will hear the same subject of controversy upon grounds not litigated in the court of law, either for want of legal testimony, or because it was a subject of equity jurisdiction and not admissible at law, or perhaps for other causes; and this although the grounds at the time of an injunction may be considered cognizable at law, if they were not so considered at the time when the judgment was rendered and the bill brought. *Ib.* 175, *note.*

In this case the plaintiff in error, finding that his common law action of trover could not be sustained, and that the powers of a court of law were inadequate to afford him relief, submitted to a judgment against him at law, and invoked the aid of a court of equity. A recovery had already been had by the defendant, and the obstacles at law interposed and threatened were insurmountable; and upon the trial at law it became evident that plaintiff's remedy was alone in equity. Besides, upon the filing of the bill, the common law action was enjoined, and the injunction was not taken off at the instance of plaintiff in error, but upon the motion of the counsel for defendant in error; and when taken off, the common law action was dismissed. Plaintiff in error had the right to elect whether he would proceed at law, or in his suit in chancery. *Eq. Dig.* 363, 364. We say, however, we were not proceeding at law, the injunction not having been dissolved at our instance, and we are not responsible for the consequences of its dissolution, or the pendency of the common law action. This was their own act, and they cannot take advantage of it. A party may after he commences a suit at law, file his bill in equity, but he must elect which of these two remedies he will resort to. This case does not fall within the principles of the case of *McGough & Crews* vs. *The Insurance Bank of Columbus*, decided by this Court. There the plaintiffs in error had an adequate remedy at law, and had neglected to prosecute their remedy to any available extent. Here the rights of the plaintiff in error are exclusively equitable, and the powers of a court of law have been found upon trial inade-

quate to afford him relief ; and the action at law was abandoned on this ground. The two cases are altogether dissimilar in their features, and the decision of the Court below cannot be sustained on the ground that the plaintiff in error is pursuing two remedies to establish the same right.

But we say, that the decision of the Court below that there was no equity in the bill to support the jurisdiction of the court, is manifestly wrong.

1. Because the dismissal of the levy on the property of the principal debtor, which the security had caused to be made, and the stay of execution, was an act prejudicial to the rights of the security, or might become so, and operate as a fraud upon the security, and consequently release him from all liability on the executions; and being released, his property could not be seized and sold under them to a purchaser with notice, without the purchaser being a trustee for plaintiff in error. 1 *Story Eq.* 320, 321 ; 7 *Price,* 23; 2 *Johns. Ch. R.* 563; *Hovenden on Frauds,* 174; 2 *Eq. Dig.* 403, *and cases cited.*

2. Because the executions levied, were an additional substantive security to the extent of the property seized, and that the discharge of it for favour to the principal, exonerated the security *pro tanto. Theo. Pr. & Sec.* 84, 85, 87 ; 1 *Story Eq.* 322 ; 2 *Eq. Dig.* 404 ; *Nelson* vs. *Williams, Sup. Ct. N. Car. Dec'r. Term,* 1838, *p.* 118 ; 4 *Johns. Ch. R.* 129.

We insist further, that the security, having been thus discharged from liability on the executions by the act of defendant in error, and with his knowledge, he purchased said property at the sale with notice, and should be decreed to hold as trustee for plaintiff in error, or account for its value. 1 *Story Eq.* 383. If these principles and authorities are worth any thing, the decision of the Court below that there is no equity in said bill to support the jurisdiction of the Court, is clearly wrong, and ought to be reversed.

GREEN & CAWSEY for the defendant in error.

This writ of error is predicated upon a petition, in effect, for a rehearing in the Court below.

1. A motion or petition for rehearing, should be made at the same term as the order or decree. 3 *Eq. Dig.* 430; 1 *Yerger,* 41. A rehearing is discretionary with the chancellor. *Travis* vs. *Waters,* 1 *Johns. Ch. R.* 48; *Field* vs. *Schieffelin,* 7 *Id.* 256. The

motion to reinstate or rehear an order or decree, must be made at the same term the order is passed.  2 Madd. Ch. Pr. 482.

2. The order on the minutes dissolves the injunction, with leave to read the answer on the trial at law.  The bill and common law case, both seek to obtain the same right; in such case the plaintiff must elect at once, or his bill will be dismissed.  Livingston vs. Kane, 3 Johns. Ch. R. 224; Sanger vs. Wood, 3 Johns. Ch. R. 415; 3 Eq. Dig. 364; Rogers vs. Vosburg, 4 Johns. Ch. R. 84; 3 Eq. Dig. 363; 10 Price, 129.  The order dissolving the injunction, proves that the common law action was' proceeding at the time the bill was dismissed.  2 Madd. Ch. Pr. 548; 3 id. 20.  This Court will hold, under the authorities, that plaintiff made his election at that time, and the bill was dismissed accordingly.  No order on the minutes necessary, under our practice, to dismiss a bill; the entry on the docket is sufficient.

3. The bill prays that the common law action may be continued until the coming in of the answer.  Query: can the same answer be evidence for the plaintiff, both at law and in equity?  The bill is a mere discovery bill, and could not, under the circumstances, be treated otherwise.  Discovery bills are dissolved of course, upon the coming in of the answer.  King vs. Clark, 3 Paige Ch. R. 76; 3 Eq. Dig. 458.

4. The Court below looked into the bill and answer to ascertain upon what ground the former chancellor dissolved the injunction and dismissed the bill, and found the bill fully answered and its objects fully attained, as far as they could be consistent with the rules of practice; and therefore held that the former chancellor dismissed the bill, 1st, because the plaintiff was proceeding at law for the same right, and had prayed a discovery to aid that action, which he had obtained; 2nd, because if the bill had been retained, plaintiff would have been harassing defendant both at law and in equity at the same time, for precisely the same right.

5. There is no equity in the bill.  The plaintiff in error could, under our statute, have paid off the judgments and controlled them against the principal defendant.  Prince, 461, (sec 175.)  The security becomes a principal when the judgment is entered.  Lenox vs. Prout, 4 Cond. Supreme Court U. S. R. 311; (3 Peters, 520;) this is a case in point.  All the fraud charged in the bill may as well be charged against plaintiff himself, as defendant; the fraud charged amounts to delay only, which will not discharge in any case.  In Frye vs. Barker, 4 Pick. 385, it is held that security may

pay the debt, and bring suit against his principal. The rule is, if the creditor contracts with the principal debtor before suit, for a valuable and binding consideration to extend the time, without the knowledge and consent of the security, he will be discharged; but when the debt is in judgment against both parties, the contract must be such as to deprive the security of the control of the *fi. fa.* *Lenox* vs. *Prout, above cited.* All the cases in the books, where the security has been discharged, are predicated on facts amounting to a discharge, before judgment against the security.

6. The petition for a rehearing admits that the bill was dismissed—the granting or not granting of the petition was discretionary with the chancellor, and is in all such cases, and when refused, will not be reversed for error.

*By the Court.*—NISBET, J., delivering the opinion.

The following are the facts appearing on this record. Curan, the complainant in the bill, became surety on a note for some $250, to Colbert, the defendant in the bill, for Tharp. Curan notified Colbert to sue, informing him at the same time that his principal, Tharp, had property sufficient to pay the debt, and that he would point it out so soon as the judgment was had. Colbert reduced the debt to judgment, both against the principal Tharp, and Curan the surety. Curan pointed out property of his ·principal sufficient to pay the debt, and at that time, he was solvent. The levy was made and released, (Colbert taking the principal's word that he would pay at Christmas following,) without the consent of Curan, and without consultation with him. At or before the expiration of the time given to the principal, he had removed all his property out of the state, and was insolvent. The surety, Curan, had in the mean time removed to Alabama, and the plaintiff in the execution fraudulently procuring a valuable wagon and team to be brought into the state of Georgia, which belonged to the surety, caused it to be levied on and sold, and he became the purchaser at less than half its value. Curan did not know of the levy until a few days before the sale, and in consequence of his distance from the place of sale, and of sickness, could not attend, and was thereby prevented from putting in a claim or otherwise arresting the sale, but had notice given at the sale, that it was illegal. Afterwards, Curan brought trover for the wagon and team, and at the first trial term, in consequence of inability to make the necessary proof,

Curan *vs.* Colbert.

a judgment was confessed for the defendant, and an appeal entered. Pending the appeal, Curan filed his bill, setting forth these facts, and his inability to proceed at law, and asking discovery; also praying that the common law action might be continued from term to term; and until the further order of the Court that the creditor might be enjoined from using his title thus acquired to the wagon and team, in defence of that action; and that the creditor, Colbert, be decreed to keep the wagon and team, and pay to the complainant their value, with hire for the use. The bill of exceptions states that the action of trover was afterwards dismissed. At the appearance term of the bill, the defendant answered, and moved to dissolve the injunction; whereupon the Court passed an order dissolving the injunction, and directing the defendant's answer to be read on the trial of the common law action. At the term following the cause was not called, and at the next term complainant's solicitor moved a rule calling upon the defendant to show cause why the bill should not proceed to a hearing; to which it was replied, that the bill was for discovery only, and that the order dissolving the injunction, and directing the answer to be read, dismissed it, and that there was no equity in the bill, and therefore it ought not to be heard, but if still in court, to be dismissed. The Court considering the rule *nisi*, and the answer thereto, dismissed the rule. It is now complained before this Court, that the presiding Judge erred,

1. In ruling that this was a bill for discovery alone.

2. In ruling that the order taken at the first term, dismissed the bill.

3. In deciding that there was no equity in the bill, and therefore the Court could not entertain jurisdiction.

[1.] The first and second grounds of error, resolve themselves into one. If this was a bill for injunction and discovery alone, then we hold with the Court, that the answer having come in, it had performed its functions, and that the order dismissed it; so that the questions for our consideration are,

1. Is this a bill for discovery and injunction alone, or is it also a bill for injunction, discovery and relief?

2. Is there such equity in it, as, according to the facts charged, entitles the complainant to relief in a court of equity?

I shall proceed briefly to give the views of this Court upon these questions, the second of which involves, as will appear, other very serious points of discussion. Whilst the bill asks discovery, it

certainly does not stop at that—it also asks relief—relief upon a statement of facts which justifies the prayer for relief. That prayer is specific, to wit, that the defendant be decreed to pay the complainant the value of the wagon and team bought by him, (the defendant) at the sale. It does not follow that because a bill asks discovery and prays injunction, it is not therefore a bill also for relief. We do not question the correctness of the order to dissolve the injunction, and direct the answer to be read at law; but although it was competent to do that, it was also competent to hold up the bill for a hearing upon the merits. The order did not dismiss the bill—it did only what it purports to do, dissolve the injunction and order the answers to be read, leaving the question for relief to be heard. If there were no allegations in it authorizing the exercise of chancery jurisdiction, there would be of course nothing upon which to predicate any further action, and the bill would fall; but if there were, then it survives to the hearing. Whether the allegations are sufficient to give jurisdiction to a chancery, is the question to be discussed under the second ground of error. The order does not settle that question; that came before the Court upon the hearing of the response to the complainant's right to proceed to a hearing. In connexion with this first ground of error, it was claimed by the counsel for the defendants in error, that where a party has two remedies for the same right, the one at law and the other in equity, he may be put upon his election as to which he will resort; that he cannot have two recoveries, &c. This position we admit, but we do not think it applies here. Upon the face of the bill it is not apparent that the complainant has two remedies; on the contrary, the complainant expressly charges that his remedy at law is inadequate. It is also said, that the order referred to, had the effect of an election to proceed at law. Not so—it was moved by the respondent, and granted at his instance; the complainant *chose* nothing. If this was a case in which the doctrine of election applied, then we hold, that under our practice the complainant was not held to elect at the first term. He was entitled to elect as he did elect, afterwards to proceed in equity by dismissing his common law action, filing a replication to the answer, and asking for a hearing. Our practice, indeed, has been, where a bill is filed ancillary to a suit at law, and at the same time praying for relief as an original bill, to permit the suit at law and the bill to be heard together, and to allow a decree to determine both; so we think there is error in the record, on the first ground.

Whether the Court had jurisdiction, or whether there was equity enough in the bill to retain it and order a hearing, came properly up, as I have stated, on the hearing of the complainant's rule; and to that question I now address myself.

[2.] The allegations in the bill are, that the principal debtor being solvent, property enough of his to pay the debt was levied on and seized by the officer; and that the creditor giving time to him, without the privity or consent of the surety, ordered the levy to be dismissed, and the property to be released; afterwards, the principal having become insolvent, the property of the surety is seized and sold. Now, was not the surety, in this case, discharged by the act of the creditor? and if so, was not that sale illegal and void? We think, clearly, he was discharged, and the sale was illegal and void. The doctrine as to what will or will not discharge a surety, is distinctly settled in the books. *Mere indulgence,* unless given upon a new and distinct consideration, or unless given under such a binding obligation as precludes the creditor from pursuing his remedies on the debt, will not discharge the surety. *Mere forbearance to sue or to call upon the principal for the money, will not discharge the surety;* for such forbearance may be beneficial to both parties. If the delay be the result of fraud, the surety will be exonerated. 3 *Call R.* 69; 1 *Gallison R.* 33; 2 *Johns. Ch. R.* 559; 6 *Binn. R.* 295; 7 *Johns. R.* 338; 13 *id.* 174; 15 *id.* 433; 17 *id.* 384; 10 *East. R.* 36; 6 *Vesey R.* 734; 1 *Bos. & Pul. R.* 419.

But if the creditor, by agreement with the principal, without the concurrence of the surety, *varies the terms of the contract,* as, by enlarging the time, *or does any act by which the surety is injured, and his risk increased,* he is discharged. *Kirby R.* 397; 1 *Caines Cas.* 1; 10 *Johns. R.* 180; 10 *id.* 587; 3 *Binn R.* 523; 6 *id.* 295; 2 *Johns. Ch. R.* 559; 2 *Desauss. Ch. R.* 250; 3 *id.* 604. This rule is founded upon the rights which the surety has in the contract; he is bound according to its terms and not otherwise. His contract is to pay if his principal does not; but it is not to pay if the creditor shall make new arrangements with the principal, amounting to a new contract, or in variation of the old contract. In equity and at law, if the creditor does any act which is prejudicial to the surety, or which increases his risk, he forfeits the right of holding the surety to the obligations of a guarantor of the debt. It is greatly prejudicial to the surety for the creditor to put it out of his power to sue or pursue the principal. He has a right to go into equity to compel him to put the debt in suit, which he cannot

Curan *vs.* Colbert.

do if he has prolonged the time of payment by a new contract, or has bound himself not to sue. It is the clearest and most manifest equity, that the creditor shall not carry on any transaction with the principal, without the privity of him who must necessarily be concerned in every transaction with the principal. "You cannot keep him bound and transact his affairs (for they are as much his as your own,) without consulting him." *Lord Chancellor, in Rees* vs. *Berrington,* 2 *Vesey R.* 543. These doctrines and reasonings apply more particularly to the relations subsisting between the creditor and the surety, before judgment; the rule is more stringent against the creditor in cases where he has converted his claim upon the principal into a lien, as in this case. Here the creditor has a perfect lien in his judgment; by our statute it binds from its date. It may be taken as a well established rule, that where a lien is fixed, any act of the creditor which discharges that lien, without the privity of the surety, discharges him. 2 *Dev. &. Bat. Eq. R.* 118; 2 *id.* 90; 7 *J. J. Marsh.* 582; 8 *Sergt. & Rawle* 452; 6 *Gill & Johns. R.* 157; 3 *Wend.* 24; 1 *Munf. R.* 269; 2 *Vesey R.* 540, *note.*

In the case before us, not only is the lien fixed by judgment, but a levy was made, and the means of satisfaction in the hands of the creditor. He dismissed the levy and discharged the means which he held for the payment of the debt; not only so, but gave time to the principal, before the expiration of which the principal became insolvent. Who shall say that these acts are not to the injury of the surety? By retaining the levy, the debt would have been paid by the principal; by releasing it, it falls upon the surety. That is the injury done—the measure of it is the whole amount of the debt—no greater could have been brought upon him. Who shall say that he is not discharged? A plainer case was never brought before a chancellor.

Dismissing a levy is an extinguishment of the lien, so far as other and junior liens are concerned; it is a fraud upon younger judgment creditors. 5 *Hill N. Y. R.* 377; 2 *id.* 364; 11 *Johns. R.* 110; 17 *id.* 274; 4 *Wend.* 332; 5 *Conn. R.* 392. A levy is a satisfaction of the execution, so far as to throw upon the plaintiff the burden of proving, either that it was insufficient, or that the proceeds were applied to the satisfaction of some prior lien, or that it was otherwise rendered unproductive, without his fault. *Davis* vs. *Barkley,* 1 *Bailey S. C. R.* 140, 142.

If these propositions be true as between liens, their application

is easy to the case of a creditor holding a judgment, levied upon the property of the principal and his surety—in short, to the case before us. If this dismissal of a levy is the extinguishment of a lien, if a levy is a satisfaction, then, surely, in this case, where there was a lien, levy and dismissal, the surety is damnified and discharged. In the case of *Bullit's ex.* vs. *Winstons,* 1 *Munf. R.* 269, the Court of Appeals of Virginia, declared the surety, Winston, discharged, on the ground that the creditor, who held a judgment against the principal, had, by letter addressed to the sheriff, countermanded an execution which was proceeding against the principal, without the privity of the surety, who was a co-defendant. In *Cooper & Arrington* vs. *Wilcox,* 2 *Dev. & Bat. Eq. R.* 91, when indulgence was granted to the principal, after judgment against him and the surety, the Supreme Court of North Carolina held the surety discharged, Judge Gaston (*magnus vir et venerabile nomen*) saying, " If the creditor does any act for the ease of the principal, without the privity of the surety, by which the surety is injured, or *exposed to injury,* that act may be laid hold of for the surety's relief." In the case of the *Commonwealth* vs. *Miller,* 8 *Serg. & Rawle R.* 452, the Supreme Court of Pennsylvania held, that there is no clearer rule in equity, than that, when the creditor has the means of satisfaction in his own hands, and chooses not to retain it, the surety is discharged. These cases from Virginia, North Carolina and Pennsylvania, are all leading cases, and were cases where there were judgments against principal and security. [3.] They recognise fully, that the relation of principal and surety, with all the rights of the surety, continues after the judgment. In the Pennsylvania case, the court say, " the doctrine that the relation of principal and surety ceases after judgment, *has no foundation either in law or reason."* It is true that the evidence of the original debt is extinguished by the judgment; that is, merged in the higher evidence of indebtment—the judgment. But the contract continues; and so do the rights of the surety under it, continue. I agree in the opinion of the Supreme Court of Pennsylvania, that the contrary doctrine has no foundation in law or reason. In addition, our statute authorizes the surety to make special defence, and to have the judgment entered against him as surety, and upon paying off a judgment against his principal, to enforce it against him for indemnity; thus recognising the relation of principal and surety, after judgment against both. *Prince,* 461, 436, 509.

Curan *vs.* Colbert.

It is objected, however, that by our statutes' just referred to, the surety is protected, in this, that he may at any time step forward and pay off the judgment, and at once indemnify himself, and therefore, he ought not to be discharged. This right—that is, the right of being subrogated to the position of the creditor upon paying the debt, existed by the general law, before'our statutes. They only afford him cumulative remedies. It has never been held in equity or at law, that the surety must pay the debt before he can avail himself of the acts of the creditor in discharge; if that were the law, I do not see how, in any case, any act of the creditor would discharge the surety. He would in every instance be turned over to his right to pay, and be subrogated; it would be in all cases a sufficient response to his demand for relief that he might have paid the debt. This doctrine would repeal all the law, and turn into contempt all the learning, now so much abounding in the books, relative to the rights and obligations of principal and surety. The surety has a right to insist upon the terms and conditions of his contract; by that he is liable to the creditor; but not liable, if by his act, without his privity, injury, or loss, or liability to loss, or increased risk accrues to the surety. He *may* pay up the debt, and be subrogated to the rights of the creditor against his principal; but he is not *bound to do this.* *Pain* vs. *Packard,* 13 *Johns. R.* 174.

It only remains to inquire whether the surety could avail himself of the grounds of discharge set forth in this bill, at law. We think he could not. Before judgment, his discharge may be pleaded in an action against him. Before judgment, unless under special circumstances, he could not come into equity, because his defence would be adequate at law. After judgment, his relief can only be full and complete in equity. The judgment, by the release of the levy, is not void, but voidable, and can be vacated only by a judgment of the court. At law, I do not see but that the title of the defendant in the action of trover must prevail. Besides, the complainant in the bill goes, not for the property, but he goes, as we think he has a right to go, for its value at the time of the sale, with hire. The property may have been greatly injured—it was perishable—he therefore demands an accounting on the part of the creditor. To this end the law would give him no adequate remedy. In the cases which I have reviewed, where judgment was open against both principal and surety, the proceedings were in chancery.

Let the Judgment of the Court below, be reversed.