No. 56.—WILLIAM BROWN, plaintiff in error, *vs.* THE EXECUTORS OF JAMES RIGGINS, deceased, defendants in error.

[1.] Any act of the creditor, after judgment against principal and surety, which injures the surety or increases his risk, or exposes him to liability, will discharge him.

[2.] When the creditor has judgment against both principal and surety, and dismisses a levy against the property of the principal, sufficient to pay the debt, the surety is discharged.

In Equity. Tried before Judge FLOYD. In Pike Superior Court. February Term, 1847.

This bill was filed by Brown, the plaintiff in error, alleging that one William V. White, Edmund Head, James Kilpatrick, and himself, gave their joint and several note to said Riggins, then in life, for $1115 67, payable to said Riggins or bearer, dated 30th January, 1837, and due the 25th December thereafter, with interest from date if not punctually paid ; that the complainant, Brown, was not interested in the consideration of the note, but was a security only, though his character of security was not set forth ; that the note was sued on, and judgment rendered against all of the said makers as principals, though it was well known to Riggins that the complainant, Brown, was only a security ; that execution was issued and placed in the hands of the sheriff, who was requested by the complainant to proceed to make the money due thereon out of the other defendants.

The bill further alleged, that with proper diligence the whole amount due on said judgment might have been made by levy and sale of the property of the principals, without resorting to the complainant, and which would have been done but for the fact, that while said *fi. fa.* was in the hands of the sheriff, in 1841, a contract or agreement was entered into between the said Riggins and James Griffin, one of the principals, without the knowledge or consent of the complainant, whereby the said Griffin agreed on his part to deliver up his negroes to satisfy said *fi. fa.*, provided Riggins would indulge him thereon until he could gather his crop ; whereupon the said Riggins agreed to, and gave the desired indulgence, and required the sheriff in writing not to proceed further against the said Griffin ; that after said term of indulgence expired, the negroes of Griffin were not to be found to be levied

on under the *fi. fa.*, having been given up to Riggins or removed away.

The bill further alleged, that the said *fi. fa.* was levied upon property of White, also one of said principals, sufficient to have satisfied the same, which levy was afterwards dismissed by the order of Riggins, and that said *fi. fa.* still remained open and unsatisfied, and that the property of the complainant was endangered, and threatened to be seized and appropriated to the satisfaction thereof. The bill further alleged fraud and collusion between said Riggins and Griffin, and Riggins and White, with a view to relieve them and subject the complainant.

The bill further alleged, that much of the complainant's property had been sold, and money arising therefrom to the amount of $7400, or other large sum, was in the hands of the sheriff, and he apprehended that the said *fi. fa.* of Riggins would be placed with the sheriff to claim payment out of the same, or be proceeded with against other of his property ; and concluded with a prayer for relief and injunction.

Riggins answered the bill, denying any knowledge of the suretyship alleged, or of the causes which induced the complainant to become a party to the note; denied all knowledge of the complainant's ordering the sheriff to proceed with the execution against Griffin ; denied making the alleged contract with Griffin for indulgence, as charged in the bill; denied having ever had Griffin's negroes in possession, or of having contracted for them ; admitted he had proceeded against White's property to save the other parties, and at the special request of the complainant, and that he always believed White's property should have paid the debt, for causes, however, not stated in the bill, and had acted on this belief, though not doubting the liability of the others, nor the propriety of forcing it out of the others if he failed with White. The answer further admitted, that Griffin's effects were sufficient to have paid the debt up to the time when he ran off his property, but denied his having received anything for indulging Griffin, or of having participated in the removal of his property; insisted that the *fi. fa.* remained open and unsatisfied, and admitted that it was his intention to exert all lawful means to enforce its collection ; and concluded with a denial of the fraud and confederacy charged.

The answer was excepted to as insufficient, and during the pendency of the exceptions Riggins died, leaving the defendants in error as his executors, who in due time were made parties.

The bill was afterwards amended, introducing additional parties defendants therein.

The exceptions to the answer were sustained. Justice, one of the executors, answered that indulgence was given the said Griffin by Riggins for the length of time stated in the bill, but that he did not know for what consideration. That Griffin at that time was worth property sufficient to pay the debt.

The execution showed a levy made on divers lots of land, besides cattle and other property, pointed out by Brown, the complainant, in November, 1841, and its dismissal in 1842; besides other levies made subsequently.

Upon the trial of the bill, and before the cause was submitted to the jury, the defendant's counsel moved to dismiss the bill, on the following grounds.

1. Because after judgment rendered, the relation of principal and surety, as shown by the bill, ceased to exist, so as to entitle the surety to his discharge on account of indulgence to the principal debtors extended to them, as stated in the bill.

2. Because an agreement or contract for indulgence to a principal after judgment, not sufficient in law or equity, for want of consideration, to bind the parties thereto, does not discharge the security on said judgment from his liability thereon, and that complainant's bill charges and exhibits a contract devoid of such legal and equitable consideration.

Whereupon, the Court below overruled the first ground of objection, and sustained the second; deciding that an agreement for indulgence to a principal debtor after judgment, not sufficient in law or equity, for want of consideration, to bind the parties to such agreement or contract, does not discharge the security on said judgment from his liability thereon, and that complainant's bill charges and exhibits a contract devoid of such legal and equitable consideration.

To which the counsel for the plaintiff in error excepted.

BAILEY, STARKE & HAMMOND, for plaintiff in error.

No appearance on the part of the defendant. The plaintiff was permitted to proceed *ex parte.*

S. T. BAILEY, for the plaintiff in error.

The bill charges, among other things, that Brown was surety

in a note to Riggins, for Griffin, White, and others, who were all principals; that the note was sued and judgment passed against all; that Brown, the surety, directed the execution to be levied on the principals in 1841; that Griffin was solvent and he had negroes enough to pay the debt. That when the sheriff was about to levy on Griffin's property, Riggins, the plaintiff, gave the sheriff written instructions not to levy on Griffin. That Griffin and Riggins had entered into a contract by which Riggins agreed to indulge Griffin until Christmas then next, or until he could gather his crop. That Griffin agreed on his part, to deliver up his negroes to be sold at Christmas, and that by virtue of this contract, said indulgence was given to said Griffin. That before Christmas arrived, all the negroes and property of said Griffin were eloigned and run off, or so disposed of that they have never been found or forth-coming to be levied on, and this either with the aid or privity of said Riggins, whereby the whole debt is thrown on Brown, the surety, all the other parties being insolvent.

That the said contract was a binding contract. See *Comyn on Contracts*, 18, where the doing an act which the law would compel, is held a good consideration. See also *Comyn on Contracts*, 28; 1 *Powell on Contracts*; *Chitty on Contracts*, 7, 8, 9, 10, 11, where it is held that any benefits, labour or prejudice, however small or trifling, will constitute a sufficient consideration for a binding contract.

That indulgence of a principal without the assent of the surety discharges the surety in all cases where there is a binding contract, is too well settled to argue or adduce any authority. But the Court below held, that there must be such contract in all cases to effect the discharge of the surety, and that we do not show or charge such a contract in our bill.

We have, as we think, shown that there is a binding contract set up in the bill between Riggins and Griffin.

But no such contract is necessary to discharge a surety, where, after a lien is fixed upon the property of the principal, such lien is discharged or lost by the act of the creditor; or where, by the active interference of the creditor any prejudice or damage accrues to the surety, he is discharged. *Niblo* vs. *Clark*, 3 *Wend. R.* 24; *Bullitt's, Ex'rs.* vs. *Winstons*, 1 *Munf. R.* 269; *Commonwealth for use of Bellas* vs. *Administrators of Miller*, 8 *Serg. & Rawle*, 452; *Cooper & Arrington* vs. *Wilcox*, 2 *Dev. & Bat. Eq.* 90; *Nelson* vs. *Williams*, *ib.* 118; *Rees* vs. *Berrington*, 2 *Vesey R.* 540, *note a*; *Law* vs. *East*

*Ind. Co.* 4 *Vesey R.* 824, *note a* 829 ; *Mayhew* vs. *Cricket,* 2 *Swanst. R.* 185 ; *Thomas* vs. *Young et al.,* 15 *East R.* 617 ; 1 *Cond. Ch. R.* 543 ; 10 *Johns. R.* 587 ; 2 *Caines Ca.* 1 ; 2 *Bos. & Pull.* 62 ; 1 *Mad. Ch.* 234 ; 1 *Story Eq. sec.* 326 ; 13 *Johns R.* 174 ; *Baird* vs. *Rice,* 1 *Call.* 18 ; *Jones* vs. *Bullock,* 3 *Bibb R.* 467 ; 6 *Munf. R.* 6–9. ·

In the case of *The Commonwealth* vs. *Adm'rs. of Miller,* the Supreme Court of Pennsylvania say, there is no clearer rule in equity than that where the creditor has the means of satisfaction in his hands and chooses not to retain it, the surety is discharged ; *ib.* 488 ; and that the doctrine, that the relation of principal and surety ceases after judgment, has no foundation in law nor reason. *Ib.* 488.

In the case of *Bullitt's Ex'rs.* vs. *Winstons,* Judge Tucker delivering the unanimous decision of the Court of Appeals of Virginia, declared the surety, Winston, discharged, on the ground that the principal creditor had, by letter to the sheriff, countermanded an execution proceeding against the property of the principal, granting him indulgence without Winston's privity, who was surety and a co-defendant in the execution. *Ib.* 281.

In *Cooper & Arrington* vs. *Wilcox,* where indulgence was granted to the principal after judgment, Judge Gaston, in delivering the opinion of the Supreme Court held the surety discharged; and declared, " If the creditor do any act for the ease of the principal without the privity of the surety, by which act the surety is injured or exposed to injury, that act may be laid hold of for the surety's relief." *Ib.* 91. And in *Nelson* vs. *Williams,* the same court again asserted the same doctrine, and declared the creditor a trustee for the surety to the extent of the property he held bound; but that he could do no act to the prejudice of the surety.

In *Rathbone* vs. *Warren,* the Court of Errors of New York held the same doctrine, and Chancellor Kent, in giving his opinion, said : " The law is well settled, that a court of chancery will never hold sureties liable, where *the risk is increased by the act of the party* for whose benefit the suretyship is intended to inure. 10 *Johns. R.* 591.

In *Pain* vs. *Packard,* 13 *Johns. R.* 174, there was a demurrer to a plea which set forth that Packard was only surety on the note sued on, that he requested the creditor to sue, that he neglected to do so until the principal debtor absconded, insolvent, whereby the whole debt would be thrown on the surety. The Supreme Court overruled the demurrer, and said : " There can be no substantial

objection to the plea; it may be said the surety might have paid the note and prosecuted the principal; but although he might have done so, he was not bound to do it."

In the case of *Niblo* vs. *Clark,* where the creditor, plaintiff in a judgment, agreed to let the principal debtor go on a journey out of the State, and to wait till his return, the Supreme Court of New York held that this discharged the bail, and also held that no consideration to such an arrangement was necessary to effect such discharge. "But," say the Court, "the true ground appears to be this, *that the plaintiff has by his act greatly increased the risk and hazard of the surety;" "the surety has been prejudiced by the active interference of the creditor."* Ib. 27.

In *Rees* vs. *Berrington,* 2 *Vesey, R.* 540, Lord Eldon said : "It is the clearest and most evident equity not to carry on any transaction without the privity of him who must necessarily have a concern in every transaction with the principal debtor. You cannot keep him bound, and transact his affairs, (for they are his as much as your own,) without consulting him ; you must let him judge whether he will give that indulgence contrary to the nature of his engagement."

Speaking of the case of *Nesbit* vs. *Smith,* his Lordship remarks: "He, the creditor, thought it better to give stay of execution than to have confounded the affairs of the man by destroying his credit and holding him in prison; but he did it without consulting the surety, and therefore, Lord Thurlow held, and very rightly, that the surety was discharged." Ib. 544.

In *Law* vs. *East Ind. Co.* 4 *Vesey R.* 833, Lord Eldon says: "Where any act has been done by the obligee that *may injure* the surety, the court is very glad to lay hold of it in favour of the surety."

The same doctrine is maintained in the other authorities referred to, and they might be multiplied.

So far from the rule in favour of sureties being relaxed after judgment, it is greatly more stringent; the creditor then has the property of the principal debtor in his power, and he lets it go at his peril; he is a trustee for the surety, and he must not jeopard his interest without he assent by any act. or omission of his, and if he does, all right feeling judges are, like Lord Eldon, "*glad* to lay hold of such act for the relief of the surety."

The case of *Lenox* vs. *Prout,* 3 *Wheaton R.* 520, and the case of *Bay* vs. *Tallmadge,* 5 *Johns. Ch. R.* 305, which followed Lenox

Brown *vs.* Ex'rs of Riggins.

&. Prout, and which maintains the doctrine that suretyship is merged in a judgment, are novelties in the law, wholly unsupported by, and adverse to, all authority ; or, to use the language of the Chief Justice of Pennsylvania, in *The Commonwealth* vs. *Miller*, " Such a doctrine is unsupported by either law or reason."

If the authorities we rely on are to have any weight, Brown is discharged, even if the Court should be of opinion that the contract between Riggins and Griffin was not binding.

Although our execution was not levied as directed by Brown the surety, still he is discharged, for the levy was prevented by the interference of Riggins, the creditor ; he forbade it without Brown's consent, whereby the property of Griffin was lost to the surety. Indeed, under our law, which fixes a lien on all the property of the defendant after judgment, no levy or direction of levy by a surety is necessary to discharge a surety. If by any act of the creditor that lien is lost, so as to throw the whole debt on the surety, or to injure or jeopard his interests, he is released. In England, and in most if not all of the other States, judgments are not liens upon personal property ; so that no binding interest attaches in behalf of the creditor, until a seizure by the officer.

In the case at bar, it is charged not only that the lien was lost to enough property of the principal to have satisfied the judgment, so as to endanger the surety, but that the whole debt had been thrown on him ; and it is also charged that Riggins colluded with the principal, and yet the Court below holds that there is no equity in the bill and dismisses it on motion, without permitting us to go into proof.

Looking to the law of the case and the charges in the bill, we cannot help thinking that the Court below, unlike the great English Chancellor, is not " *glad* to lay hold of any act that will discharge a surety."

*By the Court.*—NISBET, J., delivering the opinion.

This bill was filed by *Brown*, a surety for *White, Head, Kilpatrick*, and *Griffin*, against *Riggins*, the creditor, for relief ; alleging that he was discharged by the acts of the creditor. In this case the debt was reduced to judgment against the principals and the surety. The bill charges, that Riggins, the creditor, after judgment, and the execution being then in the hands of the sheriff, agreed with Griffin, one of the principals, to grant him time, upon

consideration that he would deliver up to him his negroes at the expiration of the time; and gave directions to the sheriff to stay proceedings on the *fi. fa.* Also, that at the time of filing the bill, there was no property of any of the principals to be found.

The bill further charges, that the execution was levied on sufficient property of *White*, another of the defendants and principals, to satisfy it, and *was by order of the plaintiff dismissed.* It proceeds to pray for a perpetual injunction of the plaintiff's execution against the surety. One other fact charged in the bill ought to be stated, and that is, that the property levied on belonging to *White*, was either taken and appropriated by the plaintiff and creditor Riggins, or run off, so as not to be reached by the officer.

The answer came in, and at the trial term the respondents moved to dismiss the bill upon the following grounds:

1. Because the relation of principal and surety ceased after judgment.

2. Because an agreement or contract for indulgence to a principal, after judgment, is not valid, and does not bind the parties thereto, for want of consideration, and therefore the surety is not discharged by such agreement.

The presiding judge overruled the first ground, and dismissed the bill on the second; and to the decision thus dismissing the bill, the plaintiff in error, *Brown*, has excepted.

[1.] Every principle involved in this case was settled in the case of *Curan* vs. *Colbert*, argued at the same term. The contract may be conceded to be void as between the creditor, Riggins, and the principal, Griffin, and still, in the case made, the contract discharged the surety. If not a valid contract, yet it was *such an act*, as injured the surety, as increased his risk, and exposed him to liability. Whilst it is true, as a general proposition, that *mere* forbearance to call upon a principal does not, *per se*, discharge the surety, yet if the consequence of that forbearance is injury to the surety, it is equally true that he is discharged. Particularly after judgment, is it dangerous to do any act which increases the risk of the surety. In this case, the principal, Griffin, was at the time of the indulgence given, *solvent*; and at the time when the creditor came down upon the surety for payment, he was *insolvent;* here is injury to the surety. It has been held that a letter to the sheriff directing a suspension of proceedings against a principal on an execution, discharged the surety. See *Butler* vs. *Winston*, 1 *Munf. R.* 269.

But the dismissal of the levy on the property of the principal, [2.] *White*, beyond all question discharged the surety. A levy, as to the surety, is a satisfaction. If a creditor who has effects in his hands sufficient to discharge the debt, belonging to the principal, releases them, the surety is, without controversy, discharged. I shall not repeat the argument which I wrote out, in the case of *Curan* vs. *Colbert;* for the reasoning and authority which govern this, see that case.

Let the judgment of the Court below be reversed.