## ARGUED AND DETERMINED

### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

## AT MILLEDGEVILLE,

### MAY TERM, 1848.

No. 45.—SEABORN A. JONES, plaintiff in error, *vs.* JOHN P. C.
WHITEHEAD, defendant in error.

[1.] Where one of two sureties is discharged by any act or omission of the
creditor, the other surety is also discharged.

Assumpsit, in Burke Superior Court. Tried before his honor,
Judge HOLT, November Term, 1847.

The facts of the case appearing in the opinion of the Court,
are not here repeated.

CHARLES J. JENKINS, for plaintiff in error, submitted the follow-
ing points and authorities ;

The discharge of a security to a note, by reason of the holder's
inaction after notice to sue, results with us, from the provisions
of the act of 1831.

At Common Law, the liability of the security is co-extensive
with that of the principal. Mere delay on the part of the
creditor, will not discharge the security. *Theobald on Prin.
and Surety,* 69, *(1 L. L.* 41.) Pitman on Prin. and Sure-
ty, 52, (40 *L. L.*) 7 *Barnwall & Cress.* 809. *(14 Eng. Com.
L. Repts.* 135.) 2 *P. Williams,* 288. 2 *Johnson's C. R.* 554,
*( See* 562.) 8 *Wendell,* 194. 4 *Pickering,* 382.

The Statute gives relief only to the security giving notice. It is intended as a protection to the vigilant, not to the careless.

At Common Law the surety can expect of the creditor no diligence to protect his interests. And he can claim nothing under the Statute, unless he comply with its terms by giving notice. *Duanis on Statutes*, 694 & 5. *(9 L. L.)*

But if the notice given by a security under the Act of 1831, can in any degree enure to the benefit of a co-surety giving no notice, it must be on the principle that he has been injured by the inaction of the creditor, and he can only be discharged to the extent of that injury—to the amount of contribution he might have claimed from the discharged security. 6 *Vesey's C. R.* 805. 2 *Swanston's R.* 193.

The other ground assumed by defendant's counsel, that the discharge of one of two or more joint and several contractors, is entirely without the Statute of 1831, and independent of the law governing principal and surety.

It is too broadly stated—it refers only to *joint* contracts, not to contract *joint and several*. The holder of a joint and several contract, has a perfect right to treat it as several only.

The application of this doctrine to joint and several contracts of suretyship, would involve the consequence that the discharge of a surety is a discharge of the principal, which is contrary to all authority. *Chitty on Bills*, 449. *Story on Bills, p.* 508. *(See* 431.) *Smith's Mercantile Law*, 270.

ANDREW J. MILLER, for defendant in error, contended :

That the discharge of one of two co-sureties, by the act or negligence of the creditor, is a discharge of the other; and cited 1 *Bos. & Puller*, 630. 31 *E. C. L. Rep.* 166. 3 *Barr's Rep.* 264. *Pitman on Prin. and Surety*, (40 *Law Lib.)* 192. 2 *Ala. Rep.* 694. 5 *Leigh*, 153.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Assumpsit was brought in the county of Burke, by Seaborn A. Jones against John P. C. Whitehead, on a joint and several promissory note, given to the plaintiff by Walter J. A. Hamilton, the said defendant, and one Joseph S. Reynolds. The defen-

dant pleaded in bar, that he and the said Joseph S. Reynolds were sureties on the note only for Hamilton; and that on the 8th day of April, 1842, the said Joseph S. Reynolds having, previous to that time, departed this life, testate, James W. Reynolds, the duly qualified Executor of his will, gave notice to the holder of said promissory note, to proceed to collect the same; and that the said Seaborn A. Jones delayed to bring his suit for more than three months, against Walter J. A Hamilton, the principal debtor; by reason whereof the estate of the said Joseph S. Reynolds was wholly relieved from all liability on said promissory note; and the defendant insisted, and so the Circuit Court decided, that in consequence thereof, John P. C. Whitehead, the co-surety, was likewise released.

[1.] The question then presented for our determination, is, whether the discharge of one surety under the facts and circumstances of this case, is a discharge of the other.

The Act of 1831 declares, " That in every case which may hereafter arise, where the security or indorser of any promissory note, or other instrument, after the same has or shall become due, has required, or shall hereafter require the holder thereof to proceed to collect the same, and the said holder has not proceeded, or shall not proceed to do so within three months after such notice or requisition, the indorser or security shall be no longer liable." *Prince*, 471.

A critical analysis of the phraseology of this Statute, would, it seems to me, sustain the judgment of the Circuit Court. It cannot be supposed that the Legislature, in using the singular number, " security or indorser," intended to restrict the operation of this most salutary act to that description of paper only, where there is but *one* security or indorser. These terms stand for the entire class, and not for an *individual* of the class. And the Statute thus construed, will read : Where the *securities* or *indorsers* of any promissory note, or other instrument, shall give notice, &c. the *indorsers* or *securities* shall be no longer liable. That is, upon failure of the creditor to sue within the time limited, the whole of the *indorsers* or *securities* shall be released. And reference to the title will demonstrate that such was the meaning of the Assembly. It purports to be an Act " declaring and making certain the law defining the liability of *indorsers* and *securities* to promissory notes, and other instruments, when the holder

thereof shall fail to proceed to collect the same after notice." If the interpretation now contended for was correct, namely, that the provisions of the Statute applied only to such security or in-dorser as gave notice, the title should have been in conformity with this construction. It should be an act to define the liability of *any* security or indorser to a promissory note, or other instrument, who may give notice to the holder to sue, &c. And then the enacting clause should run thus : where *any* security or indorser shall give notice, &c., *such* security or indorser shall be no longer liable.

It may be objected that this construction would require *all* the securities or indorsers to join in the notice, before *all* could be discharged. But I apprehend that in order to secure a benefit or privilege allowed by law to a class of persons occupying the same position, as partners and others, it is not necessary that all should unite in performing an act, which is a condition precedent to the enjoyment of the advantage. A notice from one is as available to the creditor, as a notice from all. The object is to inform the creditor that there is danger to the sureties in his farther indulgence of the principal, and that if he give it, it must be at his own peril. And I repeat, that for this purpose, a notice to sue by one, is as effectual as if all were to unite in it.

But there are other principles which may be invoked in support of the decision below. By releasing one of the sureties, the creditor has changed the terms and legal effect of this contract, and that too without the consent of the other parties. This he cannot do—neither can he at law, apportion the judgment to be rendered upon this contract. He must recover the whole amount or none, where there are no payments. But he cannot recover the whole, inasmuch as the discharged surety cannot be compelled to contribute. Besides, at Common Law, the rule is inflexible that if one of several joint promisors be released, no matter how, the other is also discharged.

We desire, however, to place this judgment upon a broader and firmer foundation than mere grammatical learning or technical rules and reasoning. And I regret sincerely that I have not leisure and the necessary aids at hand, to enable me to go fully into an examination of the protection afforded to sureties, by the provisions of the Roman Civil Law, as well as the English Common Law and Chancery practice. This doctrine has been lucidly dis-

cussed in several of the New York cases, especially in *King vs. Baldwin*, 17 *Johns.* 384 ; and *Hayes vs. Ward & others*, 4 *Johns. Ch. R.* 123.   See also the numerous authorities cited in *note b.* at the end of *Mayhew vs. Crickett and others*,   2 *Swanston's Ch. R.* 193.  We believe, however, that the following proposition may be assumed as the sum and substance of the English and American adjudications upon this subject : namely, that wherever the creditor does an act, whereby injury, or loss, or liability to loss, or increased risk accrues to the surety without his assent, that he ' is entitled to be discharged.   And the Courts uniformly refuse to require of the surety to show that he has *in fact been damnified ;* holding that he is entitled to judge for himself of what is for his own benefit, that of that he is the only judge, and that another party cannot decide for him, without discharging him.

Now apply this rule to the case at bar—is not each surety entitled to the co-operation of his fellows in supervising the principal ?   Let this enquiry be answered in the startling fact that in general, men of ordinary prudence find by experience, that they are compelled to pay at least one-half of these gratuitous obligations.   Any one of the sureties may attach the property of the principal, or sue out a writ of *ne exeat,* or take collateral securities, any or all of which cautionary proceedings will enure to the benefit of the rest.   It is true, that in entering into these engagements, we do not overlook the solvency and character for good conduct of the principal, and it is to be regretted, that men's scrutiny in this respect was not closer.   It would save a world of disappointment, loss and misery.  Still we by no means disregard the character of our co-surety, as well for vigilance as for his knowledge of the disposition and pecuniary ability, prudence and integrity of the principal.   And other things being equal, if there be two securities, their chance of escape is just doubled, and so in the same ratio in proportion to the number.  If one of two, then, or three out of four are discharged, is there not an increased risk of injury, to those who remain ?   And shall the creditor be permitted so ma_ terially to change the contract, without the privity of all concerned ?

The established rule in equity is, that if the creditor take any step, or do any act, by which he essentially jeopardizes the safety of the surety, that the latter shall be released.   Mr. Maddock has cautiously and clearly marked out some of those acts by which

a surety may be released from his liability, and has assigned the reasons on which the doctrine is founded. The Act of 1831 adopts the same principle. Parties are not now driven to a Bill of *quia timet*. All they have to do, is to give notice, and if the creditor chooses after that to extend indulgence, the sureties will stand exonerated. He cannot now, as he formerly could, delay, until the principal fails, and then throw the whole burden upon one who, when he became bound, never calculated to pay, until the principal obligant failed.

It is urged, however, by the distinguished counsel for the plaintiff in error, that the statute of 1831, contemplates some act to be done by the creditor, I reply, the law enjoins a duty to be performed. And the neglect or refusal of the creditor, to sue after notice, is equally culpable, as though he had expressly released the principal by giving *time*, accepting a *composition*, or parting with *collaterals*, without the privity of the defendant. It was the servant who knew *his master's will* and did it *not*, that was beaten with many stripes.

Suretyship has been defined to be " a lame substitute for a thorough knowledge of human nature." Be this as it may, and notwithstanding the wise man has denounced sureties, as " *snared*" and "*void of understanding*," and there are some, who decline under all circumstances to become thus bound, still there are those who will not shrink from such engagements, however hazardous. And to protect such, the Legislature has taxed its ingenuity to the utmost. And in the construction of this, and all other Acts passed for the relief of this favorite class, they should be so interpreted, if practicable, as that this cardinal purpose and intention may be carried into effect, and the spirit and design of these enactments advanced.

On every ground, therefore, we are of the opinion that the special plea of the defendant presented a good bar, and consequently that the judgment of the Circuit Court should be affirmed.