## 28296. BULLOCH MORTGAGE LOAN COMPANY *v.* JONES.

DECIDED JULY 16, 1940.

58

*Fred T. Lanier,* for plaintiff.

*R. Lee Moore, D. C. Jones,* for defendant.

STEPHENS, P. J. (After stating the foregoing facts.) The defendant Jones contends that the acts of the plaintiff in dealing with the cosurety, Nessmith, operated to increase the risk of Jones as a surety on the obligation, and to expose him to greater liability as a surety thereon, and therefore that under the Code, § 103-203, the plaintiff is not entitled to revive the judgment obtained in the

suit against the principal and sureties on such obligation, as against Jones. "Any act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk, or exposes him to greater liability, shall discharge him." This section was codified from decisions of the Supreme Court in *Jones* v. *Whitehead,* 4 *Ga.* 397, 401, and *Brown* v. *Riggins,* 3 *Ga.* 405, 412, holding that wherever the creditor does an act, whereby injury or loss or liability to loss, or increased risk, accrues to the surety, without his assent, he is entitled to be discharged. In *Brown* v. *Riggins,* supra, the Supreme Court held the surety in fi. fa. discharged, because indulgence for a definite time (before the expiration of which he became insolvent) had been granted to one of the principals, and because the property of another principal, which had been taken in excution, was afterwards discharged from levy. See *Crawford* v. *Gaulden,* 33 *Ga.* 173, 186; *Toomer* v. *Dickerson,* 37 *Ga.* 428, 438. In *Jones* v. *Whitehead,* 4 *Ga.* 397, where a mortgage against the principal was released, it was held that this discharged the surety. The court stated: "The established rule in equity is, that if the creditor take any step, or do any act, by which he essentially jeopardizes the safety of the surety, that the latter shall be released."

In *Green* v. *Mann,* 76 *Ga.* 246, was laid down this doctrine: "Joint debtors have a right of contribution which may be enforced like that of cosureties; and if the creditor so acted as to place the property of one of the joint debtors beyond the reach of the other, he would be responsible to the latter for the injury done by such wrongful diversion; and this injury may be set up in a claim case, as a discharge, at least to the extent of the damage done, as well as by an action for damages." In that case it appeared that Green and Johnson were the joint debtors, and Mann was the creditor. The Supreme Court said: "The real point to be settled was, did Mann, by his dealings with Johnson, deprive Green of the right and power of subjecting Johnson's property to the payment of the balance due on this execution . . ? Did he, by any of his contracts with Johnson, to which Green was no party, so depress the sale of the land that it failed to bring a sufficient amount to satisfy the demand he held against them? If such are the facts, and they shall be so found by the jury, we think there can be no doubt of Green's discharge from this liability. No reason occurs to us, in

that event, why the altered relation growing out of these various transactions, was not in fact, though not technically perhaps, that of principal and surety between Johnson and Green, and why Green would not be entitled to call to his aid any principle of law or equity which would discharge a surety under like circumstances from his obligation to the debt. There can be no doubt of the existence of the right of contribution between joint debtors." (The court then referred to the right of a surety who has paid his debt to the principal, where judgment has been obtained against the principal and sureties, to control the fi. fa. and to levy upon the property of the cosurety, and thus compel contribution.) "Beyond controversy, where the relation of principal and surety exists, either by contract or operation of law, any act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk, or exposes him to greater liability, will discharge him, . . and why, upon analogous principles, standing upon the same footing of reason and justice, such conduct upon the part of a creditor should not discharge a codebtor under the circumstances said to exist here . . we are unable to understand." In *Williams* v. *Kennedy,* 134 *Ga.* 339, 344 (67 S. E. 821), the court said: "There is a difference between a case where the risk or liability of the surety is increased, or he is injured, by a positive act of a creditor, and one where his risk or liability is increased, or he is injured, by the mere failure of the creditor to act."

In *Lumsden* v. *Leonard,* 55 *Ga.* 374, 376, the Supreme Court stated that in order to release the surety "some *act* must be done by the creditor, either before or after judgment, which injures the surety in some way." Some of the other decisions holding that a positive act of the creditor which tended to increase the risk or liability of the surety, or to injure him, will operate to discharge him, are *Lewis* v. *Armstrong,* 47 *Ga.* 289; *McCarter* v. *Turner,* 49 *Ga.* 309; *Curran* v. *Colbert, 3 Ga.* 239 (46 Am. D. 427); *Griffeth* v. *Moss,* 94 *Ga.* 199 (21 S. E. 463); *Ward* v. *McLamb,* 118 *Ga.* 811 (45 S. E. 688).

The surety Jones contends that the evidence before the court presented a case where his risk or liability was increased, and he was thereby subjected to injury by a positive act of the plaintiff in releasing its judgment lien against the property of the cosurety, Nessmith. The courts hold that while mere failure or negligence

on the part of the creditor to proceed against the principal or other surety does not necessarily release a cosurety, an exception to this general rule is to be found where the creditor omits to do something by which some "collateral security in his hands or within his reach is made unproductive." *Lunsden* v. *Leonard,* supra. The surety is generally not bound if the person secured does any act which violates or injures the rights of the surety. 50 C. J. 110. The underlying principle by which a surety may be released upon his contract by dealings or arrangements between the creditor and the cosurety, to which he is not a party, applies where there have been such dealings between the creditor and the cosurety as may tend to enlarge or increase the liability of the other surety, without his consent, or to expose him to greater liability, as where the act of the creditor tends to defeat the operation of subrogation to the rights of the creditor upon payment of the obligation, or to defeat the operation of right, afforded by law, to contribution between sureties. It has been held that the right of sureties to contribution must not be impaired by any affirmative act of the creditor. "It must be borne in mind that, while the creditor has nothing to do with the right of the sureties for contribution among themselves, he must not affirmatively do any act tending to impair it. In other words, he must not by his action destroy or impair the rights of sureties between themselves." Hard *v.* Mingle, 206 N. Y. 179 (99 N. E. 542, 42 L. R. A. (N. S.) 1131, 1133). It has been held that where, through the laches of the plaintiff creditor the risk and liability of the surety has been increased, in that the principal has become insolvent and any right of lien against the property lost, the surety would be discharged. *Hayes* v. *Little,* 52 *Ga.* 555, 556. To the same effect see *Toomer* v. *Dickerson,* supra. Ordinarily it is a question of fact whether stated acts of the creditor in relation to his dealings with the other surety, relative to the obligation on which his cosurety is likewise bound, would operate to expose such cosurety to greater liability and tend to increase his risk and thus injure and damage him as a surety on the obligation.

The judge was authorized to find from the evidence that the plaintiff held an execution issued on a judgment obtained in 1930, in a suit brought against the maker of the note, Mallard, and against Cuyler Jones and Dorsey Nessmith as sureties on this note, a revival of which judgment was sought by the plaintiff in this case

against Mallard and the surety Jones, the surety Nessmith being deceased; that the balance due thereon was $664.16; that Nessmith owed the plaintiff bank, separately and apart from his liability to the bank as a cosurety with Jones on the obligation of Mallard, an individual note for $1500, which was secured by a deed to the bank conveying 53 acres of land; that on January 6, 1934, Nessmith conveyed to the Federal Land Bank Commissioner the 53-acre tract of land by security deed, and obtained a loan thereon of $1000; that on January 15, 1934, the holder of the individual indebtedness of Nessmith, who was the creditor and holder of the indebtedness of Mallard on which Nessmith and Jones were sureties, released from the lien of the execution on the Mallard indebtedness the 53-acre tract of land, and also released this land from the operation of the security deed given to the bank by Nessmith to secure his individual $1500 indebtedness to it, in consideration of receiving $801.75 of the amount received by Nessmith from the Federal Land Bank of Columbia, "together with other funds from borrower," such release reciting that it was executed in order to clear the title to the above land and in order that the bank might receive the benefits of such loan, and that it was not intended to "release any other lands of the said Dorsey Nessmith;" that this 53-acre tract of land was worth around $2700, $1200 more than the individual debt of Nessmith to the bank and transferred to the plaintiff creditor, which was more than enough to satisfy the balance due on the execution held by the plaintiff at the time, on which Nessmith was liable to it as a surety, in the same manner as the defendant Jones, likewise a surety, was liable to it; that Nessmith thereafter died and owned no property at the time of his death, thus defeating the right of Jones to enforce contribution by Nessmith out of the latter's estate, and that the risk of the cosurety Jones was therefore "materially increased" by the release, by the holder of the lien of said execution, of the land of Dorsey Nessmith from this execution. In these circumstances a finding was authorized that the acts of the plaintiff creditor in regard to Nessmith and his property tended to increase the risk of Jones, a cosurety with Nessmith on the obligation of Mallard, on which a judgment had been obtained and which was held by the plaintiff, and to expose Jones to greater liability as a surety in that any right that Jones might have had to obtain or enforce contribution from his cosurety, Nessmith, was by the positive acts and conduct of the creditor forever lost.

The judge, over objection of the plaintiff, allowed Jones to introduce in evidence deed records from the office of the clerk of Bulloch superior court, as to the security deed from Nessmith to the Federal Land Bank, and as to the release to Nessmith from R. E. Gormley, superintendent of banks, and to read to the court the record of such instruments as appeared from the record books. It does not appear that after objection was made by the plaintiff to the reading of these records in evidence, on the ground that they were not the highest and best evidence and that the originals had not been accounted for, the foundation was not then made by the defendant for the introduction of secondary evidence, and that the court did not for that reason admit such evidence. Error will not be presumed, and the burden is on the party complaining to affirmatively show error. Therefore, the court having admitted the evidence, and it not appearing that the foundation therefor had not been made, it will be presumed, not that the court acted erroneously and admitted secondary evidence without any foundation therefor, but that a foundation therefor had been made, and that the court did not err in admitting the evidence. Also, presumably the custody of the release and security deed above referred to was with the Federal Land Bank of Columbia, South Carolina, the grantee in the deed and the person at whose instance the release was executed, and not in the custody or control of the defendant. Therefore it does not appear that the defendant had the custody or control of these instruments. It does not appear that the admission of secondary evidence as to the contents of these instruments was error. There is no insistence that certified copies of the deed and of the release would have been better evidence than the original records thereof in the clerk's office. No error appears in these special assignments of error.

The judgment in favor of the defendant Jones was not contrary to law, and was authorized under the evidence.

*Judgment affirmed. Sutton, J., concurs. Felton, J., concurs in the judgment.*