WILKINSON, ordinary, for use, etc., *v.* CONLEY, admr.

1. Where an administrator's bond was given with several sureties thereto, binding themselves jointly and severally, and suit was brought thereon, and in consideration of the payment of $2,000 by one of the sureties, "to pay his proportion of any and all liability," the suit was dismissed as to him (though it was recited that he had' not been served and had waived no right), and an instrument was executed by plaintiff's attorney, reciting such payment, dismissing the case as to him, and agreeing to look to the principal and other sureties on the bond to pay the balance which might be recovered thereon, "without further cost or detriment" to the surety paying such amount, this was on its face a release of such surety from further liability.

2. Even if such agreement were not enforcible as a valid contract, for want of authority on the part of the attorney who made it, or of the temporary administrator 'and heirs on whose behalf it was made, yet the transaction, including the dismissal as to one surety of a suit already brought, for a consideration paid by him, and not bringing any further action against him, constituted such conduct as released the other surety on the administrator's bond, especially if the first surety had removed from the State and' further action against him had become barred by the statute of limitations.

Argued June 7,—Decided November 20, 1909

Action on bond.    Before Judge Pendleton.    Fulton superior court.    June 8, 1908.

*Burton Smith,* for plaintiff.

*Westmoreland Brothers,* for defendant.

LUMPKIN, J.    John L. Conley was appointed administrator of John Broad, deceased.    On July 26, 1881, he gave an administrator's bond with several sureties, among them being Benjamin Conley, John C. Hendrix, and Rufus B. Bullock.    The bond stated that the principal and sureties bound themselves jointly and severally. In 1884 E. S. McCandless was appointed administrator de bonis non of the estate of Broad, in lieu of Conley.    He brought suit against Conley to recover the amount due by the latter to the estate for sums received by him as administrator and unaccounted for. On March 15, 1898, John L. Conley died, and James Banks was appointed administrator.    He was made a party defendant to the suit, and on December 20, 1899, the plaintiff recovered judgment against him quando acciderint for $19,790.70 principal and $22,156 interest.    Benjamin Conley, one of the sureties on the administrator's bond of John L. Conley, died on January 10, 1886, leaving John L. Conley as his executor.    The latter having died, as stated above, on March 15, 1906, Morris Conley was appointed adminstrator.    On June 12, 1906, the present suit was brought in the name of John R. Wilkinson, ordinary, for the use of E. S. McCandless, administrator de bonis non, against Morris Conley, administrator of Benjamin Conley, deceased, being a suit on the bond to recover of the estate of Benjamin Conley as one of the sureties the amount of the judgment against Banks, administrator of John L. Conley. It was alleged that J. C. Hendrix, another surety on the bond, was a non-resident of the State, and that the other sureties beside him and Benjamin Conley, deceased, were insolvent, one of them was

dead, and two others were non-residents. The defendants pleaded, among other things, that McCandless, administrator, settled with Hendrix, one of the sureties on the bond, for $2,000 and discharged him from further liability thereon, and thereby discharged the estate of Benjamin Conley, another one of the sureties. On the trial the suit against John L. Conley and the recovery against his administrator, with the execution based thereon, were introduced in evidence; also the bond of Conley as administrator; and the history of the administration and the deaths above stated were proved. It was shown that a former suit had been brought on the bond against R. B. Bullock and others. All of the defendants therein were not stated in the evidence, except that Hendrix was one of them. An instrument was executed and given to Hendrix, in the following terms: "Georgia, Fulton County. For and in consideration of the sum of $2,000.00 Two Thousand Dollars, paid by J. C. Hendrix to pay his portion of any and all liability of the sureties on the bond of John L. Conley as administrator of the estate of John Broad, deceased, the suit instituted against said Conley and his surety on said bond is hereby dismissed as to said Hendrix, who, while named as a party, was never served, and waived no right. And we hereby covenant and agree to look to said Conley and the other sureties on his bond to pay the balance that may be recovered on said bond, or against the said Conley, by reason of his being administrator as aforesaid, without further cost or detriment to said Hendrix. [Signed] Burton Smith, Attorney of record for E. S. McCandless, Temporary Administrator de bonis non of the Estate of John Broad, deceased, Jonathan Broad, Elizabeth Maynard, Nellah Newman, Marion Pascoe, and Philip A. Broad, for all heirs of the Broad estate. This May 5th, 1896." Pending that suit Bullock obtained possession of this paper and set it up as operating as a release to him. That suit was then dismissed, and in 1906 the present one was brought against the administrator of Benjamin Conley. At the close of the evidence, the presiding judge directed a verdict for the defendant, and the plaintiff excepted.

If the paper executed and delivered to Hendrix, one of the sureties on the bond of John L. Conley, administrator, was a release or discharge of liability on his part, it undoubtedly operated to discharge Benjamin Conley, another surety. All of the authorities agree to this principle; but there has been some diversity of views

as to the difference between a discharge and a covenant of indemnity or an agreement not to sue one who is liable along with others, and as to whether a particular instrument operated as one or the other. The case of *Kendrick* v. *O'Neil, Foster & Co.*, 48 *Ga.* 631, was strongly relied on by counsel for plaintiff in error. It was decided by a divided court, two Justices holding that the instrument then under consideration did not operate as a discharge, but as a covenant of indemnity or one not to sue. Chief Justice Warner dissented. He contended that, under the provisions of the code (then §§ 2810, 2811, now §§ 3714, 3715 of the Civil Code of 1895), the paper operated as a release to one of the defendants jointly liable, and therefore released the other. We need not determine whether the construction placed by the majority of the court upon the instrument, or that of the dissenting Chief Justice, was correct. See, on this subject, *Powell* v. *Davis*, 60 *Ga.* 70; *Marietta Savings Bank* v. *Janes*, 66 *Ga.* 286; *Martin* v. *Monroe*, 107 *Ga.* 330. The case before us presents some features which clearly differentiate it from the *Kendrick* case. The latter involved the liability of a partnership, where the firm had to be sued in order to enforce it. The question was asked, whether it was the intent of the parties, in reserving the right to enforce the liability of the firm, to destroy the ability to do so. Here the case is one on a bond expressed to be joint and several. The parties evidently did not contemplate that it would be necessary to sue all the sureties at once as a means of enforcing liability on the bond, because the plaintiff dismissed Hendrix from the former suit, and in bringing the present action no defendant is made except the administrator of Benjamin Conley, one of the sureties. Moreover, the paper under consideration in that case was materially different from the one now involved. There it was stated, "Received of John J. Thrasher $300.00, paid by him, to be credited on a certain written obligation of O'Neil, Foster & Company to Lemuel Kendrick," thus recognizing the entire liability as that of a partnership, and providing a credit upon it of the amount paid by Thrasher. Here it was recited that $2,000 was paid by Hendrix "to pay his proportion of any and all liability of the sureties on the bond of John L. Conley," thus acknowledging full payment of his proportion of the liability. There the paper continued (referring to the obligation above mentioned), "and now in the hands of Hillyer & Brother for collection," thus indicating

the intention to collect the obligation of the firm, of which Thrasher was a member.   Here, in consideration of the $2,000 paid by Hendrix as his proportion of all liability on the bond, "the suit instituted against said Conley and his surety on said bond is hereby dismissed as to said Hendrix," thus declaring the intent to terminate the suit as to Hendrix.   It is true that it was stated that, while he was named as a party, he had not been served and had waived no right; but there is nothing to show that he might not have been served and retained in the suit, if the parties had intended to permit him to be sued.   There the agent of the holder of the obligation stated that he did "hereby covenant and agree that the other partners shall and will duly pay the balance on said obligation, without further cost or detriment to said Thrasher." Here it was stated, "and we hereby covenant and agree to *look to* said Conley and the other sureties on his bond to pay the balance that may be recovered on said bond, or against said Conley, by reason of his being administrator as aforesaid, without further cost or detriment to said Hendrix."   In that case there was a covenant that the other partners would pay the balance due on the obligation, which, in view of the character of the liability and the language of the instrument, was construed by the majority of the court to be a covenant of indemnity.   In this case Hendrix was dismissed altogether as a party defendant, and the covenant was "*to look to* said Conley and the other sureties on his bond to pay the balance that may be recovered on said bond."   This was not merely a covenant of indemnity, but a complete severance of one of the sureties from the case, in consideration of the payment of what was agreed to be the amount of his liability, and a covenant to look to other parties for the balance.   While the words "without further cost or detriment" were used in both cases, in the light of the facts of the present case they strengthen the position indicated.   How could Hendrix be sued and compelled to pay all or a large part of the liability on this bond, in spite of an agreement to look elsewhere for the balance beyond what he had already paid, and have a judgment for the entire amount with cost entered against him and collected from him, and yet have it said that this was without cost or detriment to him, if he could sue the other contracting party for breach of contract?   Can there be a doubt that, if Hendrix had again been sued, he could have successfully pleaded this agreement as a

defense, if it was valid? We think it very clear that the agreement with Hendrix was, on its face, a release from further liability on the bond.

It was urged on behalf of plaintiff in error that neither the attorney who signed the agreement, nor the temporary administrator, nor the heirs of Broad had authority to release Hendrix as a surety. If there were no creditors or other persons in interest, we perceive no reason why they could not bind themselves by a release. The same person who was then temporary administrator is now the permanent administrator. The administration has been pending for some twenty-five years, and there is no intimation in the record of the existence of creditors. If clients receive money from an attorney under such a paper, they could not keep it and repudiate his authority. As, however, the question of authority to accept less than the full amount of the liability and make a binding contract of release as to Hendrix has been raised, and the evidence is silent as to some of the matters mentioned, we deem it best not to rest our decision solely upon the contract, considered as a valid and binding release of Hendrix. Section 2972 of the Civil Code of 1895 reads as follows: "Any act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk, or exposes him to greater liability, will discharge him; a mere failure by the creditor to sue as soon as the law allows, or negligence to prosecute with vigor his legal remedies, unless for a consideration, will not release the surety." The names of seven sureties appear attached to the bond forming the basis of the suit. Of these the petition alleged that two were non-residents of the State and insolvent, that two more were insolvent, and that a fifth died insolvent. Thus apparently Hendrix and Benjamin Conley, or the administrator of his estate, stand as the only two sureties who are solvent. The administrator's bond was executed and attested in Fulton county, and the former suit against Hendrix was brought there; so that it may be inferred that he resided in that county. The present petition alleged that at the time when it was filed he was a non-resident of the State. In 1896 a suit was begun on the bond against Hendrix and others, and, for a valuable consideration paid by him to the attorney of the plaintiff it was dismissed as to him, and he has never been sued again, so far as this record shows. The administrator's bond was given in 1881. The

principal was alleged by the plaintiff to have been removed from the administration in 1884, about twenty-two years before the present suit was brought. McCandless testified that he took charge of the Broad estate about August, 1884. Apparently from this record a suit against Hendrix is now barred. Benjamin Conley was entitled to have contribution from his cosureties, if he should be held liable, and not to have his risk increased, or be exposed to greater liability, by reason of the conduct of the plaintiff. There is no suggestion that the attorney did not have authority to manage the litigation, and to affect the rights of his client by his conduct of it. If Hendrix was sued as a surety, and for a consideration by him the suit was dismissed as to him, and after a lapse of about thirteen years, when he had become a non-resident of the State, and when apparently any enforcement of liability against him had become barred by the statute of limitations, another suit was brought against another surety, it is palpable that the latter was injured and his risk increased. Even if the contract to release Hendrix was not so binding that he could have enforced it, nevertheless, under the rule in *Brown* v. *Executors of Riggins,* 3 *Ga.* 405, what was done in the former litigation was such an act as jeopardized the other surety, Benjamin Conley, exposed him to greater liability, and therefore released him. In the case last cited a creditor had a judgment against both principal and surety, and dismissed a levy against the property of the principal, sufficient to pay the debt. It was urged that the indulgence of a principal without the assent of the surety would discharge the surety where there was a binding contract, but that the agreement between the creditor and the principal there involved was not binding or enforcible, and therefore did not discharge the surety. Nisbet, J., said, that the contract might be conceded to be void as between the creditor and the principal, and still, in the case made, the contract discharged the surety; and that, if not a valid contract, yet it was such an act as injured the surety, as increased his risk, and exposed him to liability. Whether Hendrix could have resisted a suit against him, if brought by the ordinary for the use of the administrator, and have compelled a performance of the contract of release, or whether in such a suit there could have been a recovery, in spite of such contract, by setting up lack of power to make it at the time when it was made, nevertheless neither the administrator nor the ordinary on his be-

half has taken any further action against Hendrix.   He paid a consideration and was dismissed from a case already brought, with an agreement to look elsewhere for any further recovery on the bond; and it seems that this agreement is now being carried out, and the administrator is seeking to look to another surety alone for a recovery.   It is unnecessary to argue these facts, further than to state them, to show that the other surety, whose estate is now sought to be subjected, was injured, exposed to greater liability, and his risk increased.   He was discharged, and the judge of the trial court properly directed a verdict in favor of his administrator.   See also *Jones* v. *Whitehead,* 4 *Ga.* 397.

*Judgment affirmed.   All the Justices concur.*