Bethune *vs.* Dozier.

No. 33.—JAMES N. BETHUNE, administrator, &c. plaintiff in error, *vs.* PRYOR DOZIER, defendant in error.

[1.] The undertaking of a surety being *stricti-juris*, he cannot, in Law or Equity, be bound further than the very terms of his contract; and if the principal and obligee change the terms of it without his consent, the surety is discharged.

[2.] If the obligee bind himself to furnish 800 acres of pine land to furnish stocks for a saw-mill, and the principal accept of 680 acres in fulfilment of

the contract, without the consent of the surety, it is such an alteration of the original bargain as will discharge the surety.

[3.] Where it is doubtful whether the surety intended to *request* the creditor to sue the principal as a matter of *favor*, or to *require* it as a matter of *right* under the Statute, it is proper to submit it to the Jury to find from the facts, how the parties understood the matter.

Debt, in Muscogee Superior Court. Tried before Judge IVERSON, May Term, 1851.

On 24th day of September, 1839, Pryor Dozier leased or rented to Garland B. C. Terry and Sterling Terry, a set of mills on Upatoie Creek, known as Fuller's Mills, " and also the privilege of eight hundred acres of pine land adjoining the said mills, for the purpose of supplying the said mills with stocks; also the dwelling and out houses, &c." The rent reserved was 125,000 feet of lumber per annum; to be paid monthly, or $1,000 per annum, at the option of the lessees. On the back of the lease was a bond executed by Garland B. C. Terry and Sterling Terry, John M. Bethune and Joseph D. Bethune, to Pryor Dozier, in the penal sum of $2,000, conditioned, upon the payment of the rent above specified by the Terrys, to be void, else to be in force.

Suit was commenced by Pryor Dozier against James N. Bethune, as administrator upon the estate of Joseph D. Bethune, deceased, upon the bond above described. The declaration set out the bond and also the lease in full. The breach complained of was that the said Terrys " did not faithfully comply with their said agreement and did not pay the said rents as they regularly fell due." This count did not aver a demand for the lumber.

An amended count set forth the lease and bond, and averred that the mills, dwelling house, &c. were not delivered on the day of the making of the lease, but in three days thereafter; that the Terrys accepted of them at that time, and waived all objections on account of the delay; that the plaintiff did not deliver the whole eight hundred acres of land mentioned in said lease, but did deliver a very large part, to wit, six hundred and

eighty acres of the same, which the said Terrys then and there accepted of the same in full, and waived all rights in consequence of the failure ; and that this was a sufficient quantity of land to furnish stocks for the mill, and that no damage thereby accrued to the Terrys or to Jos. D. Bethune.

Defendant's counsel demurred to this declaration, on the ground that the first count alleged no demand, and that the second count showed that the defendant's intestate, being merely a surety, was released by the failure of plaintiff to comply with his contract. The Court overruled the demurrer, and this is the first ground of error assigned.

Among other testimony introduced on the trial, defendant proved that more than three months before this suit was commenced, on Dozier's demanding payment from him, he replied he could do nothing until judgment was obtained against the Terrys. The witnesses did not understand defendant to demand of plaintiff to sue the Terrys, but rather a request.

Counsel for defendant requested the Court to charge the Jury " that if the principals in the bond sued on accepted a less quantity of land than was specified in the contract, without the knowledge and assent of the surety, then the surety was discharged." The Court declined so to charge, but on the contrary charged, " that Terrys, the principals, might, without the assent of the surety, accept of less than the eight hundred acres of land specified in the contract; and if they did so accept of 680 acres, they and their surety were bound by the acceptance, provided such acceptance was without any special contract between the principals and Dozier; that if Dozier put the Terrys in possession of a tract of land supposed by both parties to contain 800 acres, and subsequently by survey it proved to contain less, that would not release the surety from the contract; that if, however, Dozier and the Terrys made a new contract, varying the terms of the former one, the surety would be discharged ;" which refusal to charge, and charge as given, are assigned as error.

Counsel for defendant requested the Court to charge farther " that if the surety or his representative had requested the plain-

tiff to sue the principals, and he had failed to do so within three months, the surety or his estate were discharged;" which charge the Court refused to give, but on the contrary instructed the Jury, " That a mere request by the surety or his representative to a creditor to sue the principal was not sufficient to discharge the surety, if suit was not commenced, inasmuch as a request might be merely asking for something as matter of favor and not as matter of right; that if the Jury believe that the request proved was understood by the parties at the time, as a demand or requirement by the administrator of Bethune upon Dozier, to proceed to collect the debt from the principals, in such case the surety was discharged, unless suit is brought within the time. But it must be a positive demand to sue, and so understood by the parties at the time, in order to discharge the surety. If it appeared that it was a request of a favor, and so considered by the parties at the time, then the surety was not discharged by reason of a failure to sue in three months."

Which charge as given, and refusal to charge, are also assigned as error.

JAS. JOHNSON, represented by H. HOLT, for plaintiff in error.

H. L. BENNING, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Was the Circuit Court right in holding that the *Terrys* might accept of 680 acres of pine land, in lieu of the 800 stipulated by *Dozier* to be furnished for the use of the saw-mill, without discharging *Bethune,* the surety?

[1.] No principle of law is better settled at this day, than that the undertaking of the surety, being one *stricti juris,* he cannot, either at Law or in Equity, be bound farther *or otherwise,* than he is by the very terms of his contract; and that if the parties to the original contract think proper to change the terms of it without the consent of the surety, (which it is not disputed they have a right to do,) the surety is discharged.

He is not bound by the old contract, for that has been abrogated by the new; neither is he bound by the new contract, because he is no party to it; neither can it be split into parts, so as to be his contract to a certain extent and not for the residue; he is either bound *in toto* or not at all.

Neither is it of any consequence that the alteration in the contract is trivial, nor even that it is for the advantage of the surety. *Non hæc in fædera veni*, is an answer in the mouth of the surety, from which the obligee can never extricate his case, however innocently or by whatever kind intentions to all parties, he may have been actuated. *Mackay and McDonald vs. Dodge and Mackay, survivors, &c.* 5 *Ala. R.* 388. *Walsh vs. Bertie*, 10 *Johns. R.* 180. *Leavett vs. Savage*, 16 *Maine,* 72. *The Bank of Washington vs. Barrington and others,* 2 *Penn. R.* 27. *Miller vs. Stewart*, 4 *Wash. C .C. R.* 26. *United States vs. Kirkpatrick,* 7 *Wheat.* 720. *United States vs. Vanzant,* 11 *Wheat.* 184. *Whetcher vs. Hall,* 5 *B. & C.* 269, (11 *Eng. Com. Law,* 225.) *Herd vs. Nadham,* 1 *East,* 619. *Campbell vs. French,* 2 *H. Black.* 163. 6 *T. R.* 200. *Barker vs. Barker,* 1 *T. R.* 289. *Strange vs. Lee,* 3 *East,* 484. *Myers vs. Edge,* 7 *T. R.* 254.

I will refer briefly to the principles established in several of these leading cases, and apply them to the one before the Court.

In *Miller vs. Stewart*, Mr. Justice Washington stated, by way of illustration, that if the obligee, by a subsequent agreement with his debtor, the principal obligor, agree with him to enlarge the time stipulated in the bond for payment or performance, *even for a day,* and upon the terms of the principal paying up a part of the debt immediately and giving additional security, *both of which conditions are manifestly advantageous* to the surety, by diminishing his responsibility; still if such agreement received not the sanction of the surety, he is discharged, upon the ground that the terms of the contract to which he was bound, being changed without his consent, it is a different contract from that which he engaged to guaranty, and consequently not his contract.

In *Mackay and McDonald vs. Dodge and Mackay, survivors, &c.*

the Supreme Court of Alabama say, "It is not however neces-
sary that it should appear that the surety has been injured ne-
cessarily by the alteration, *nor would it make any difference if it
was evident he was to be benefited by it.* It is a sufficient answer
that it is not the contract for the performance of which he was
surety."

The *case* of *Whitcher vs. Hall,* affords a striking example of
the tenacity with which this rule is adhered to. The facts were
that the defendant was surety for another to the plaintiff, for the
milking of 30 cows, at £7 10*s.* each, per annum; subsequent-
ly an agreement was entered into, without the consent of the
surety, that the hirer was to have 28 cows for one half of the
year, and 32 for the remainder. The Court held that it was a
new bargain, which was not binding on the surety, who had a
right to insist on a literal performance of the contract; that
there might be but little difference between the two contracts,
but that the true question was, whether the contract sought to be
enforced against the surety, was the one for the performance of
which he was bound.

Judge *Ormond* thinks that this case may have been pushed
to the very verge of propriety; he nevertheless, very properly
adds, that it places in a strong point of view, the inflexibility of
purpose with which the rule that no change shall be made in
the terms or mode of performance of a contract, without con-
sent of the surety, is adhered to by the Courts.

But while the learned Judge who decided this case, concedes
the rule, he holds that it is in the power of the principal *to accept*
of something less than was stipulated to be done by the other
party, without consulting the surety; and that this is in fact no
new agreement, but a continuance of the original bargain.

But we hold it to be the duty of the obligee to *aver* and *prove*
the performance, not substantially, but literally, of the original
agreement. It is a condition precedent to his right of recovery.
But the Court held otherwise, both by its decision upon the de-
murrer to the declaration and its charge to the Jury.

If I covenant with an individual, that in consideration that
he will lease me 800 acres of land, to be used for cutting stocks

to supply a saw-mill, I will allow him so much lumber as rent, and I subsequently accept of a less quantity, i. e. 680 acres, is not this necessarily a new contract? And does it require any other stipulation in order that it shall take the place of the original bargain? Is it not substituted by legal implication? If the principal may accept 680 acres in the present case, why not 100 or any other quantity? And if he could alter the contract, by waiving the fulfilment in this particular, why not in any other? Shall it be left to the other parties, or even to the Courts, to determine, whether the alteration is to the benefit or prejudice of the surety? Better, in this State especially, where every thing has been done which the ingenuity of the Legislature could devise, to protect sureties, to adhere rigidly to the rule, that where any alteration is made in the contract, whether by a new agreement, either express or implied, and although the situation of the surety may not thereby be made worse, that still he shall be discharged.

*Ideo consideratum est,* that the judgment below be reversed.

[3.] As to the question of notice, we think the law was properly submitted to the Jury.