HARRINGTON v. FINDLEY et al.

1. The element of usury being the controlling one in this case, and the ruling in *Lewis* v. *Brown*, this term (89 *Ga.* 115, 14 S. E. Rep. 881), being directly applicable, the sureties were not bound, and there was no error in denying a new trial.

2. That the principal in a usurious note waiving homestead and exemption fails to plead the usury or to assert his right to homestead and exemption on account of it, but submits to a judgment against himself for the whole debt, will not hinder the sureties from taking advantage of the usury as a ground of discharge, they having been ignorant that the note was tainted at the time of its execution by them. Their discharge does not depend upon actual loss, but upon the risk of loss to which they were exposed by reason of the concealed usury in the contract of lending of which the note was the result.          *Judgment affirmed.*

May 30, 1892.

Usury. Principal and surety. Before Judge WELL-BORN. Hall superior court. January term, 1891.

v 89-25

On January 28, 1887, Harrington sued Lawshe as principal, and Findley and Martin as sureties, on a promissory note dated January 1, 1883, due July 15, 1883, for $350 with interest from date at 8 per cent. per annum, containing a waiver of homestead, and bearing receipts for $250 paid December 18, 1883, and for $5 interest paid August 5, 1884.   It contained also a clause pledging certain realty of the principal for payment. The principal made no defence, and a verdict and judgment against him were rendered.   The sureties pleaded, among other things, that the plaintiff contracted with the principal to receive and did receive usurious interest on the note, thereby increasing the liability of the sureties and releasing them; that the waiver of homestead was rendered void by reason of said usury; and that because of certain payments of usury the plaintiff gave to the principal extensions of time without the knowledge or consent of the sureties, by reason of which they were discharged.   The jury found for the sureties. The plaintiff moved for a new trial on the grounds, among others, that the verdict was contrary to law and evidence, and that the court erred in charging as follows: "If you should believe from the evidence that the plaintiff contracted to receive from the principal, P. F. Lawshe, more than the legal rate of interest on the note sued on, without the knowledge or consent of the securities, then the waiver of the homestead in the note would be of no effect as against the right of the principal, P. F. Lawshe, to take homestead on his property;   and that would increase the risk of the securities, and they would be discharged from their obligation as such sureties, and you should find for the defendants."   It was contended that this instruction was based on an assumed state of facts and was unauthorized by the evidence; that there was no evidence that the plaintiff charged any usury or extended the time of payment for the principal, or that

the principal had taken a homestead; and that, a judgment having already been obtained against the principal, and no plea of usury having been filed, the sureties were concluded.

At the trial the plaintiff testified: I let Lawshe have the full amount expressed in the note. There might have been two per cent. paid back, but if there was I have no recollection of it. When Lawshe got the money he said to me, "I know your rule is to charge ten per cent., and I intend to make it all right"; but he never did pay anything to me except what is credited on the note, nor I never contracted to receive anything. What Lawshe said was merely a verbal statement that he never complied with, and I knew the promise was illegal and could not be enforced; and this is what I meant in my former statement, that the contract was for ten per cent. Lawshe agreed to pay me ten per cent. interest, but there was only eight per cent. put in the note. I don't think Lawshe ever paid me anything as interest on the note, but all the money he paid me was put on the note as credit. The five dollar credit was put on the note by the defendant in his own writing, and I knew nothing of it until I got home; I thought it was only paid as a credit on the note. I have no recollection of his ever paying me a dollar except what is credited on the note. He never paid me one cent for forbearance, neither did I ever agree to forbear with him in the collection of the note if he would pay me more than the lawful interest. All the credits entered on the note were for the purpose of paying the legal interest and principal due on the note, and I know that no amount paid me on the note was usury. I might have discounted two per cent. from the face value of the note, at the time it was made, up to the time it became due, as I usually do that when I loan money; yet I have no recollection of doing that in this case. I never made

any contract to extend the time of payment. Nothing was ever paid me by way of usury or for extension of time.

Lawshe testified: I agreed to pay eight per cent. interest and a bonus for the loan, which brought it up to twelve per cent. My impression is that I received the full amount of the loan and paid back the bonus, but I can't be positive; don't remember. Payments were made to Harrington. It was interest paid according to promise, and I did not consider the question of lawful or unlawfulness of it. Extensions were given from time; I do not remember how long.

The evidence further showed that the note was signed by the principal and sureties at the same time in the plaintiff's office, and that the sureties had no notice of any usury being charged, or of any contract to pay usury.

J. M. TOWERY and G. H. PRIOR, for plaintiff.

W. F. FINDLEY and S. C. DUNLAP, for defendants.