### 15300.  KENNEY *v.* ARMOUR FERTILIZER WORKS.

1. "It is only when the discharge of a surety is claimed upon the ground that the act of the creditor has injured him that proof of loss on the part of the surety is required (and in some such cases it might not be necessary). Proof of a loss by the surety is not required where his discharge is dependent upon an act of the creditor which has increased his risk, nor where it is claimed that the act of the creditor has operated to discharge the surety by exposing him to greater liability."

2. The defendant, being released from liability on the note because of his risk being increased by the failure of the creditor to keep the cotton insured in accordance with agreement, had a legal right to prosecute his claim for the value of his cotton held as collateral by the plaintiff after such release; and any part of the charge of the court which abridged this right was error.

DECIDED DECEMBER 9, 1924.

Complaint; from city court of Blakely—Judge Gray. January 7, 1924.

Application for certiorari was made to the Supreme Court.

*W. G. Park, Glessner & Collins,* for plaintiff in error.

*Pope & Bennet, Lowrey Stone,* contra.

BLOODWORTH, J.  Suit on a promissory note was brought by Armour Fertilizer Works against T. B. Kenney and the administratrix of the estate of J. C. Hudspeth.  On demurrer the administratrix was dismissed as a party defendant, and the case proceeded against Kenney alone.  He admitted a prima facie case and assumed the burden.  The note sued on was signed, "J. B. Kenney," and "Est. J. C. Hudspeth, by J. O. Bridges, executor," and was given for fertilizer.  In his answer Kenney alleged, in substance, that he was the tenant of Martha J. Hudspeth, who had a life estate in the land he rented; that she bought the fertilizer and sold

it to him; that he signed the note only as surety, and for the purpose of showing what amount of fertilizer he got in distinction from that of other tenants; that he did not buy or receive any fertilizer from the plaintiff; that upon maturity of the note on October 1, 1920, Martha J. Hudspeth was without funds to pay the same; that the plaintiff extended the time for payment upon her turning over to it, as collateral, warehouse receipts representing eight bales of cotton belonging to her, "on condition that the company would not only extend the time of payment of her note as aforesaid, but would also (at its own expense) keep the cotton so pledged to it insured up to its full market value;" that the plaintiff failed to keep the eight bales of cotton insured in accordance with its contract, and, "by reason of said breach by the plaintiff of its covenant to keep said cotton fully insured, the risk of this defendant as surety on the note sued on was materially increased, and he was thereby, as matter of law, thenceforth discharged and released from all liability to the plaintiff on said note;" that this risk resulted in actual loss by fire on September 7, 1921, of some of the cotton pledged by Mrs. Hudspeth as collateral on this note. Defendant alleged also in his answer that on the same date, to wit, October 20, 1920, Mrs. Hudspeth turned over to the plaintiff the eight bales of cotton as collateral on said note; that the plaintiff "*induced* him, as surety on said note, to likewise pledge to the company as collateral security for its ultimate payment, on like terms and conditions, the warehouse receipts representing fifteen bales of cotton belonging to this defendant;" that notwithstanding he was, prior to September 7, 1921, released from all liability as surety on said note, because of the plaintiff's failure to keep said cotton insured, the plaintiff retained the fifteen bales of cotton put up as collateral by defendant, and that said "plaintiff corporation, on or about the 22d day of April, 1922, wrongfully and without any color of authority converted all of said cotton to its own use by selling the same, without this defendant's consent or knowledge, at private sale;" and he alleged, by way of a cross-action, that he was "entitled to recoup and recover of the plaintiff in this action the market value of said cotton at the time of said sale." Plaintiff filed no demurrer to this plea.

The defendant introduced evidence showing that no guano was shipped to him; that it was shipped to the Hudspeth estate, and

that he purchased it from Mrs. Martha J. Hudspeth and paid her for it. There is ample evidence to show that there was no consideration to the defendant Kenney, except as surety. Furthermore, since he based his defense to the note on the fact that he was released by the plaintiff's increasing his risk as a surety, and the jury found that he was so released, their finding could have been based on the increased risk, because he showed by competent evidence that the plaintiff did agree to keep said collateral cotton insured, and did fail to comply with this agreement. Plaintiff introduced no evidence to show that it did not make such an agreement, or that it complied with such agreement. In fact the plaintiff introduced no evidence at all in rebuttal of the defense set up by the defendant surety. The verdict was, "We, the jury, find in favor of the defendant T. B. Kenney;" and upon this verdict judgment was entered against the plaintiff for the cost of suit.

Kenney filed a motion for a new trial (because of his failure to recover on his cross-action), which was overruled; to which ruling he excepted.

The 4th ground (1st special ground) of the motion for a new trial alleges that the court erred in charging the jury that if they believed "that in consideration of the depositing of such security with it, the plaintiff agreed to keep such cotton insured against loss by fire; that it failed to carry out this agreement; that such cotton was wholly or partially destroyed while in the custody of the plaintiff, resulting in loss to the maker of the note sued on, Mrs. Hudspeth; that the risk of the surety, Kenney, was increased to the extent of such loss, that he would be relieved of liability as a surety upon such note to the extent of the loss occasioned by the loss of such cotton. If you should find this to be true, under the evidence, then it would be your duty to find in favor of the defendant Kenney the amount of such loss, as you ascertain it to be from the evidence produced to you." This charge was error, because the increasing of the surety's risk released him from *all* liability on the note, under the pleadings and the evidence. It might be contended that it was harmless error, since the jury did release him from all liability on the note. It is true the jury by their verdict released the defendant from liability on the note, but they failed to find in favor of the defendant on his cross-action, and it is not certain what evidence they took into consideration in arriving at this verdict.

It may have been a compromise verdict, or they may have offset the claim of the defendant for his fifteen bales of cotton against the claim of the plaintiff on the note. Defendant contends that he was totally released by virtue of his risk being increased, and that, after being so released, he was entitled to recover his fifteen bales put up as collateral, and the plaintiff had no claim thereon.

The statute is perfectly plain on this subject. Section 3544 of the Civil Code (1910) provides that "Any act of the creditor, either before or after judgment against the principal, which injures the surety, *or increases his risk, or exposes him to greater liability,* will discharge him." (Italics ours.) The use of the disjunctive "or" shows that injury to the surety or loss is not the only thing which will discharge the surety. It may be loss, *or* increase of risk, *or* exposure to greater liability. Any one of these three, according to the words of the statute, will discharge the surety; and there was evidence that the surety's risk was increased and he was exposed to greater liability by the plaintiff. Section 3540 of the Civil Code provides that "The contract of suretyship is one of strict law, and his liability will not be extended by implication or interpretation." Kenney is in the position of an accommodation indorser. No consideration flowed direct to him. His only consideration was that extended to his principal. It is for this reason that our law throws unusual protection around a surety. As stated by Judge Lumpkin in the case of *Bethune* v. *Dozier,* 10 *Ga.* 235, "In this State . . everything has been done which the ingenuity of the legislature could devise to protect sureties." The court says also in that opinion that "no principle of law is better settled at this day than that the undertaking of the surety being one stricti juris, he can not, either at law or in equity, be bound farther *or otherwise* than he is by the very terms of his contract" (italics ours) ; and "he is either bound in toto or not at all." And in discussing the opinion in a case there cited the court said that the judge "very properly adds that it places in a strong point of view the *inflexibility of purpose* with which the rule that *no change shall be made in the terms or mode of performance* of a contract, without consent of the surety, is adhered to by the courts." (Italics ours.) Part of the terms and mode of performance in the instant case was that the collateral cotton should be kept insured by the plaintiff. The opinion in *Bethune* v. *Dozier,* supra, quotes approvingly from

the Supreme Court of Alabama to the effect that "It is not, however, necessary that it should appear that the surety has been injured necessarily by the alteration, nor would it make any difference if it was evident that he was benefited by it. It is a sufficient answer that it is not the contract for the performance of which he was surety."

While the defendant in this case did allege that the plaintiff's failure to insure the cotton as per agreement resulted in actual loss, he did not base his discharge from liability upon this loss, but based it strictly on the plaintiff's increasing his risk by failure to insure the cotton as per agreement. The allegations of the answer in this regard are that *"by reason of said breach* by the plaintiff of its covenant to keep said cotton fully insured, the *risk* of this defendant as surety on the note sued on was materially *increased,* and he was *thereby,* as a matter of law, thenceforth discharged and released from all liability to the plaintiff on said note." This brings the case squarely under the decision in *Cloud* v. *Scarborough, 3 Ga. App.* 7 (59 S. E. 202), the second headnote of which is as follows: "It is only when the discharge of a surety is claimed upon the ground that the act of the creditor has injured him that proof of loss on the part of the surety is required (and in some such cases it might not be necessary). *Proof of a loss by the surety is not required where his discharge is dependent upon an act of the creditor which has increased his risk,* nor where it is claimed that the act of the creditor has operated to discharge the surety by exposing him to greater liability." (Italics ours.) In discussing the three things laid down in code section 3544 that would release the surety, the court said (p. 9): "It need not be shown that the act of the creditor, relied upon as a discharge, not only injured the surety, but also increased his risk and exposed him to greater liability. On the contrary, the acts which may effect the discharge of the surety are divided into three distinct classes, not necessarily related to or affecting each other; and proof of any act coming within either class—either an act which injures the surety or an act of the creditor which increases his risk, or an act which exposes the surety to a greater liability—will discharge the surety. It is only when the act complained of falls in the first class—when it is claimed that the surety has been injured—that proof of loss is necessary. Loss or proof of loss is not essential, to discharge a surety, either

in a case where the act of the creditor increases the risk of the surety, or where he seeks to be released because the act of the creditor has exposed him to greater liability." The court said also (p. 8) that our code section was merely an incorporation of the principles asserted in *Brown* v. *Executors of Riggins,* 3 *Ga.* 405, and *Jones* v. *Whitehead,* 4 *Ga.* 401. Referring to these early decisions, we find in the latter decision the following: "Wherever the creditor does an act whereby injury or loss, or liability to loss, or increased risk accrues to the surety without his assent, . . he is entitled to be discharged; and the courts uniformly refuse to require of the surety to show that he has in fact been damnified." And the court states that this rule is the "sum and substance of the English and American adjudications upon this subject." We thus see that this rule of ancient origin—nearly a century old—is the same one under which we operate to-day, upon which our present code section is based, and under which a surety is discharged because of increased risk or exposure to greater liability. The endurance of the rule during all these years is the best evidence of its strength and worth.

In the case of *Toomer* v. *Dickerson,* 37 *Ga.* 428, the security claimed a discharge because of the creditor's failure to record a mortgage. "It was insisted in the argument of this case that the security had suffered no injury from the failure of the creditor to record the mortgage. Upon that point the record is silent." And the court said (p. 440): "We know nothing upon that point in the case, except what the record discloses. The record discloses the fact that in consequence of the failure to record the mortgage, as required by law, the risk of the security was increased, and that he has been exposed to greater liability; at least such is necessarily the legal effect from the facts proved in the record." On page 439 it is said: "The language of the code is 'Any act of the creditor,' which may as well be an act of omission as any other act, whereby the risk of the security is increased, or exposes him to greater liability." This is peculiarly applicable to the case under consideration, because it was the plaintiff's "act of omission," in failing to insure the cotton as per his agreement, that released the surety on his note. In *Atlanta National Bank* v. *Douglass,* 51 *Ga.* 206, where the creditor failed to record a mortgage and cancelled it and took another, it was held that "the security is discharged, notwith-

standing it may be affirmatively shown that the mortgage, though duly recorded and not canceled, would have been no protection to the security by reason of older liens." In the opinion it was said: "It is contended in this case that as there was evidence going to show that the surety was not in fact hurt by this act of the plaintiff, the judge should have charged the jury that the surety was not discharged if he was not injured, or at any rate, that he was only discharged pro rata, according to the amount of injury. But the code very certainly means more than this; it does not stop at the words 'injures the security,' it adds 'increases his risk or exposes him to greater liability.'" In the instant case the collateral was given at the time the note was extended and the promise of insurance was made. An extension of a note could easily prove detrimental to a surety and loss accrue to him which would not have occurred had the note been collected at maturity. Therefore the assent of the surety to an extension is a valuable consideration, and any inducement offered for such assent is likewise valuable.

In the case of *White* v. *Ault,* 19 *Ga.* 553, White was security, and the Supreme Court said that "if time of payment was given by Ault to Stafford, beyond that specified in the notes, without the consent of White, either express or implied, so that Ault himself could not coerce payment within that period, nor be compelled to do so by White the security, nor the security himself do so by paying up the debt and getting the control, . . the surety is absolutely discharged." In the case of *Harrington* v. *Findley,* 89 *Ga.* 385 (15 S. E. 483), the Supreme Court, referring to a usurious note, said the sureties could take advantage of the usury as a ground of discharge, and that "their discharge does not depend upon actual loss, but upon the risk of loss to which they were exposed by reason of the concealed usury in the contract of lending of which the note was the result." These and numerous other decisions are in harmony with our statute law relative to sureties; for example: section 3540 of the Civil Code, making the strictijuris rule apply; section 3542, providing that the release of one surety discharges a cosurety because it increases his risk; section 3543, providing that a novation without consent of the surety discharges him; and section 3544, providing that any act of the creditor which increases the surety's risk will discharge him.

To distinguish some apparently, but not in fact, conflicting deci-

sions on this question, we call attention to the following principles which have been invoked where the facts were applicable: If the surety bases his discharge upon a loss sustained, he must prove such loss, and a charge to the effect that he would be released in proportion to the loss wrongfully occasioned by the creditor would be proper. If the surety was liable for a certain amount, and nothing was ever done to make him liable for more than this amount, or, in other words, to increase his risk, but the creditor did wrongfully release or dispose of collateral the value of which was less than the amount for which the surety was bound, then the surety would be discharged pro tanto rather than in toto. If at the time of the original undertaking by the principal and the surety the creditor holds no collateral, or a fixed amount of collateral, and subsequently to the original undertaking, and without consideration *or inducement to the surety to act,* the creditor procures collateral or additional collateral prior to the maturity of the indebtedness, and wrongfully disposes of the additional collateral, the surety would not be discharged in toto, because the risk which he undertook is not increased. None of these three principles is applicable to the case under consideration. In the instant case the surety did not base his claim for discharge upon any loss sustained, or upon any portion of the collateral being wrongfully disposed of; nor did he or his principal give the collateral without consideration and inducement to act. On the contrary, the note had matured; it may have been collectible from the principal at maturity, thus releasing the surety; the plaintiff did not collect it, but said to the principal and the defendant surety, "If you will give me this cotton as collateral, I will, as an inducement for such collateral, extend the note and keep the cotton insured at my expense;" the surety assented to an extension of the note upon this inducement; and the defendant claims a discharge as surety because the plaintiff failed to keep the cotton insured as per agreement, thereby increasing the surety's risk and exposing him to greater liability. So far as the extension, the collateral, and the insurance were concerned, it was a novation in the nature of an original undertaking.

The defendant being released from liability on the note because of his risk being increased by the failure of the creditor to keep the cotton insured as per agreement, he had a legal right to prosecute his claim for the value of his cotton held as collateral by the plain-

tiff after such release; and any charge of the court which abridged this right was error.

Under the above ruling and the evidence in this case, the court erred as alleged in special grounds 4, 5, 6, 7, 8, and 10. The error complained of in ground 9 is harmless, in view of the verdict rendered. The judge erred also as set out in ground 11. The defendant surety admitted a prima facie case, assumed the burden of proof, and introduced his evidence; and the plaintiff introduced no counter evidence. "The party on whom the burden of proof rests has the right to open and conclude the cause before the jury." *Mason* v. *Croom, 24 Ga. 211* (2).

*Judgment reversed. Broyles, C. J., and Luke, J., concur.*