## ARMOUR FERTILIZER WORKS *v.* KENNEY.

Where a surety suffers injury arising collaterally and not affecting the contract itself, "the discharge is only to the extent of the loss or injury, and, if that be not as great as the liability of the surety, then pro tanto."

No. 4760. JANUARY 13, 1926.

Certiorari; from Court of Appeals. 33 *Ga. App.* 126.

*Pope & Bennet,* for plaintiff.

*W. G. Park* and *Glessner & Collins,* for defendant.

GILBERT, J. The case originated by the filing of a suit on promissory notes by Armour Fertilizer Works against T. B. Kenney and the administratrix of the estate of J. C. Hudspeth. On demurrer the administratrix was dismissed as a party, and the case proceeded against Kenney alone. The notes sued on were signed, "T. B. Kenney" and "Est. of J. C. Hudspeth, by J. O. Bridges, Executor," and were given for fertilizer. Kenney, in his answer, insisted that he did not sign the note as principal, but as surety; that he had been released from liability thereon by the acts of Armour Fertilizer Works; that he himself had delivered to Armour Fertilizer Works fifteen bales of cotton which the latter had sold; and that, since he had been released from liability, he was entitled to recover for the cotton delivered by him to Armour Fertilizer Works. He alleged, as a reason for his release from liability, that he was a tenant of Martha J. Hudspeth, who had a life-estate in the land he rented; that she bought fertilizer for which the note was executed and sold it to him, and he signed the note only as surety; that he did not buy or receive any fertilizer from the plaintiff; that upon maturity of the note on October 1, 1920, Martha J. Hudspeth was without funds to pay it; that the plaintiff extended the time for payment, upon her turning over to it, as collateral, warehouse receipts representing eight bales of cotton belonging to her, on condition that the company would not only extend the time

Appeal and Error 4 C. J. pp. 918, n. 42; 920, n. 53.
Principal and Surety 32 Cyc. p. 175, n. 52.

of payment of her note, but would also, at its own expense, keep the cotton so pledged to it insured up to its full market value; that the plaintiff failed to keep the cotton insured in accordance with its contract, and, "by reason of said breach by the plaintiff of its covenant to keep said cotton fully insured, the risk of this defendant as surety on the note sued on was materially increased, and he was thereby, as a matter of law, thenceforth discharged and released from all liability to the plaintiff on said note;" that this risk resulted in actual loss by fire, on September 7, 1921, of some of the cotton pledged by Mrs. Hudspeth as collateral on said note. For a further and more complete statement of the case reference is made to the decision of the Court of Appeals, in 33 *Ga. App.* 126 (126 S. E. 284).

The first assignment of error in the petition for certiorari is as follows: "Because said decision holds (headnote two) that 'The defendant (was) . . released from liability on the note, because of his risk being increased by the failure to keep the cotton insured in accordance with the agreement.' Plaintiff says that said ruling of the Court of Appeals was erroneous, because (1) said defendant admitted a prima facie case and assumed the burden of proving his defense, and there was no evidence in the record to show that said cotton was not insured; and (2) the undisputed evidence in the record showed that said cotton of the alleged principal, which was pledged as collateral, had a value of only $800, whereas the amount of the debt was $2399.23 principal, besides interest; and therefore, even if the plaintiff creditor had agreed to insure said $800 worth of cotton, and had failed to do so, the risk of the defendant (the alleged surety) could not have been increased (by a failure to insure) except to the extent of the value of the property pledged by the principal, to wit: $800, and therefore the defendant could not be held discharged from all liability on the note, but could be discharged only to the extent of the value of said pledged cotton, to wit: $800, leaving the defendant Kenney (the alleged surety) still bound on the note to the extent of about $1600; and because (3) there was no evidence in the record to show that the plaintiff creditor ever knew of the alleged suretyship of the defendant Kenney, until that defense was pleaded, long after the alleged failure to insure the cotton which had been pledged by the other signer of the note; and (4) be-

cause the undisputed evidence showed that said cotton, which was pledged by such other signer, was put up long after the alleged contract of suretyship was made, and not as a part of the contract of suretyship, or even an extension of time for any definite period." The headnote in its entirety is as follows: "The defendant, being released from liability on the note because of his risk being increased by the failure of the creditor to keep the cotton insured in accordance with agreement, had a legal right to prosecute his claim for the value of his cotton held as collateral by the plaintiff after such release, and any part of the charge of the court which abridged this right was error."

It will be observed from the statement of facts that the agreement between the principal debtor and the creditor, which the surety alleges was breached, thus materially increasing his risk and discharging him from liability, was an agreement made after the execution of the original note and after the date of maturity. The breach by the creditor was not of any obligation arising under the original contract. The failure to keep the cotton of the principal insured under this collateral agreement, and the loss of said cotton by fire, was an injury arising collaterally and not affecting the contract itself. The failure to insure as per agreement did not increase the risk of the surety; the surety's risk was the same after the breach as when the original contract was executed. The assignment of error upon which the Court of Appeals ruled was a ground of the motion for new trial complaining that the trial court gave in charge the principle stated in our headnote, that is, that "where a surety suffers injury arising collaterally and not affecting the contract itself, 'the discharge is only to the extent of the loss or injury, and, if that be not as great as the liability of the surety, then pro tanto,'" it being insisted in the ground of the motion that the court should have instructed the jury, under the facts of the case, that the surety would have been wholly discharged. We have undertaken to show that under the facts the charge given by the trial court was a proper charge; and even if the surety did not plead injury or loss, but did plead that he was wholly discharged, if under the facts he was not entitled to the latter charge he would have no right to complain that the court gave him the benefit of the charge actually given, because that charge was beneficial to him. If the court had not so charged the jury, the issue

would have been whether the surety was wholly discharged or liable in toto. Under the decision in the case of *Johnson* v. *Longley,* 142 *Ga.* 814 (85 S. E. 952), first headnote, the surety was discharged only to the extent of the loss or injury; and if that be not as great as the liability of the surety, then pro tanto. The decision of the Court of Appeals holds that the surety was wholly discharged, because his risk was materially increased. Obviously that court rendered its decision on the theory that the surety did not plead loss or injury so that the court might apply the doctrine ruled in *Johnson* v. *Longley,* supra. His plea was, as set out above, that by reason of the failure to keep the cotton insured as per contract his risk was materially increased. We see no merit in the remaining assignments of error contained in the petition for certiorari. Other assignments of error apply to excerpts from the opinion, and constitute reasons assigned by that court for reaching their conclusion. Still other assignments refer to matters of evidence, with which we will not now deal, since the case goes back to the Court of Appeals for another examination.

*Judgment reversed. All the Justices concur.*