SUSSEX FINANCE COMPANY, a corporation of the State of Delaware, v. RAYMOND S. GOSLEE.

---

(*June* 13, 1951.)

CAREY, J., sitting.

*Howard W. Bramhall* for plaintiff.

*Daniel J. Layton, Jr.,* for defendant-petitioner.

Superior Court for Sussex County, Judgments Nos. 75, 76, 78, 79, 80, 81 and 439, April Term, 1950.

Additional facts appear in the opinion of the Court.

CAREY, J.:

In several of these cases, it is alleged that plaintiff has failed to allow credit for certain payments made by the vendees prior to the entry of judgment. Plaintiff does not dispute this statement and has agreed to allow the proper credits. In view of that stipulation, this point will be ignored.

The individual cases are not alike in every respect and require separate discussion. The motions now before the Court are in the nature of a demurrer and raise only the question whether or not the petitions make out proper cases for relief. For present purposes, therefore, all allegations of fact contained therein are accepted as true. It is to be presumed, however, that petitioner has stated his case in the manner most favorable to himself. *Zink v. Kessler Trucking Co.*, 8 *W. W. Harr.* 271, 190 *A.* 637.

It is said that the petitions in all seven cases should be dismissed because they are not verified. *Cf. Chandler v. Miles*, 8 *W. W. Harr.* 431, 193 *A.* 576. This technical criticism is not mentioned in the briefs, and I assume that it is not to be pressed.

A word concerning practice in this type of proceeding may not be amiss. The Supreme Court in *Miles v. Layton*, 8 *W. W. Harr.* 411, 193 *A.* 567, 112 *A. L. R.* 786, and this Court in *Chandler v. Miles, supra*, noting that the former practice had been unsatisfactory, laid down certain rules for future guidance. I find nothing in the new Superior Court rules which alters the procedure outlined in the two cited cases. In fact, the wording of Rule 60 (b) suggests the conclusion that the method of attacking judgments by confession remains unchanged. Under the

correct practice, since the allegations in No. 75 and No. 80 do not justify setting aside either of the judgments as being null and void, the appropriate prayer is one to open them to ascertain what amount, if any, is due thereon. Those petitions will accordingly be treated as asking only for that relief.

■■ The applications in all instances being one to open, the proceedings are equitable in nature, are addressed to the discretion of the Court, and are to be disposed of in accordance with the principles of equity. *Chandler v. Miles, supra.* One of those principles is that the petition must affirmatively show the existence of a meritorious defense to plaintiff's claim. 49 *C. J. S., Judgments,* § 324, page 586.

### No. 80 (*Showell Note*)

■ In this petition, it is averred that, after entry of the judgment, plaintiff agreed to release petitioner from any liability as endorser of this particular note, because it had been found that the loss was caused by certain neglect on the part of the finance company. If the allegations of the petition be ultimately proven, and no adequate defense be shown, they would justify the relief sought. The motion to dismiss this petition must be denied.

### No. 75 (*West Note*)

■ This note represented the sale price of a Ford tractor, plus finance charges. It is averred that plaintiff included in its finance charges the sum of $1.00 as a fee for recording the conditional sales agreement; that it failed or neglected to record that agreement and therefore acquired no lien upon the tractor; that, as a result of this failure to record, it was unable to repossess the property upon default by the vendee. Under the factual situation made out, the duty of recording the contract was probably upon the finance company and, if loss was caused by its failure to perform that duty, the endorser would be discharged, at least to the extent of the loss thus occasioned. *Com-*

*mercial Credit Corp. v. Joseph Greco Motor Co., (La. App.)* 16 *So.* 2d 660; *Auto Brokerage Co. v. Morris & Smith Auto Co.,* 106 *Misc.* 147, 174 *N. Y. S.* 188; *People's Bank of Ava v. Baker, (Mo. App.)* 193 *S. W.* 632. This is an application of the basic principle that an endorser is discharged from liability if the security is impaired by the act or neglect of the holder, to the injury of the endorser, and without his knowledge and consent. 10 *C. J. S., Bills and Notes,* § 476, *page* 1039. *Restatement, Security, Sec.* 132.

In the allegations of this petition, however, one material element is wanting. An inability to repossess personal property does not necessarily follow from a failure to record a conditional sales agreement covering it. The reservation of title in such an unrecorded contract is void only as against innocent purchasers or creditors. Section 5955 *Revised Code of Delaware* 1935. In re *Ford-Rennie Leather Co., D. C.* 2 *F.* 2d 750. Accordingly, it is not clear that plaintiff's neglect caused any loss, or resulted in an impairment of the security. It is not alleged that the property passed to an innocent purchaser or that some other creditor acquired a lien upon the tractor. Petitioner's brief suggests that the latter event did occur, but statements in a brief cannot reinforce a defective pleading.

Because it does not appear that plaintiff's alleged neglect in this case caused an impairment of security, the motion to dismiss this petition must be granted.

No. 78 and No. 79
*(Shields and Carey Notes)*

As these two petitions are very similar, they may be discussed together. They charge that the notes were secured by conditional sales contract covering automobiles; that all of the component parts of the cars having any separate value were removed therefrom without petitioner's knowledge until they were towed into his place of business; that the notes included finance charges which in turn included the cost of fire, theft

and collision insurance; that plaintiff has made no efforts to collect from such insurance, if it was purchased; that plaintiff's failure to recover for the loss is due either to plaintiff's neglect in failing to proceed against the insurance carrier or to plaintiff's fraud in not obtaining a policy for which it had made a charge. One important defect in this petition consists in the drawing of an inference not warranted by any allegation of fact. The mere fact that certain parts of the cars had been removed by someone before repossession does not necessarily mean that there was a loss compensable under a theft policy. For all that appears, the parts may have been removed by the vendees themselves, or by others under circumstances not constituting a theft. *Cf. Commercial Credit Co. v. Sample*, 178 *Ark.* 1199, 13 *S. W.* 2d 593, 65 *A. L. R.* 781. In such event, a demand upon the insurance carrier would have been a futile gesture. Moreover, in those circumstances, the failure to procure insurance would be an immaterial factor.

By this ruling, I do not mean to suggest that a petition to open a judgment must set forth the details of the evidence to be presented at the hearing; I do say that the pleader must set forth at least all ultimate facts which are necessary to make out a meritorious defense. In these two cases, no facts, basic or ultimate, are included to show affirmatively that a loss occurred which was, or would have been, covered by theft insurance. These petitions do not, therefore, make out a situation where plaintiff's neglect caused an impairment of security. The motion to dismiss must be granted.

### No. 76 (*Adkins Note*)

This petition presents the following factual situation: the note was secured by a conditional sales contract covering an automobile; about six months before the entry of judgment against the endorser the car was towed to his place of business by representatives of the plaintiff; Goslee then for the first time saw that it had been wrecked and had no value except as junk; plaintiff

included in its finance charges the cost of insurance against loss by fire, theft and collision; plaintiff has made no attempt to recover under the insurance policy for the damage done to this car in the collision wherein it was wrecked. It is not averred that plaintiff had any earlier knowledge than did petitioner of the damage to the car. Plaintiff is charged with neglect in failing to resort to the insurance coverage or, in the alternative, with fraud in not obtaining insurance after making a charge for the cost thereof.

██ If we assume that plaintiff did secure collision insurance, under which all or part of the loss could have been recovered, can it be said that plaintiff's failure to resort to that collateral releases the endorser? Usually, in the absence of an agreement to the contrary, the holder of a note may look to the endorser without first resorting to any collateral, and upon payment the endorser becomes entitled to receive the security and is subrogated to any rights of the holder. Under some circumstances, however, an endorser has a right to demand that the holder first proceed against the collateral security. *Restatement, Security*, Sec. 131. But in this instance it does not appear that Goslee ever made such a demand nor is it charged that there was any agreement, express or implied, on plaintiff's part to subordinate its right of recovery from him to a recovery from the collateral. Goslee had full opportunity to preserve this security, if it existed, by paying the balance due and exercising his right of subrogation. No Delaware decisions have been cited, and, in my opinion, the law is correctly set forth in *Restatement, Security*, Sec. 132, as follows:

"Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced *pro tanto* if the creditor

"(a) surrenders or releases the security, or

"(b) wilfully or negligently harms it, or

"(c) fails to take reasonable action to preserve its value at

a time when the surety does not have an opportunity to take such action."

Under the present hypothesis and the state of facts alleged, the endorser cannot escape liability, because he had the opportunity to preserve the security in the manner mentioned. Under this part of the petition, Goslee is not entitled to relief.

Assuming, on the other hand, that plaintiff failed to obtain insurance, as the petition alternatively alleges, we have a different situation. In that event, plaintiff breached its agreement by failing to provide the security which it was duty bound to secure. This was a circumstance over which Goslee presumably had no control. The status of the matter is the same as if plaintiff had surrendered or released security without the endorser's consent. On learning of the damage to the car, he could not have protected himself either by requesting plaintiff to proceed against the security or by exercising his subrogation right for, by reason of plaintiff's act or neglect, the security did not exist. It would be highly inequitable thus to permit plaintiff to take advantage of its own neglect or wrong-doing simply because Goslee failed to take prompt action after learning of the loss. Had he acted immediately, he would only have sooner discovered the reduction of his liability because of plaintiff's fault. Under this part of the petition, a case for relief is made out and the motion to dismiss cannot therefore be granted.

### No. 81 (King Note)

This petition is similar to those in Nos. 78 and 79 as well as No. 76, in that it avers that the automobile involved was either wrecked or stripped. Reliance is placed upon plaintiff's failure to collect on the insurance policy or, alternatively, its failure to procure insurance. What has been said with respect to those three judgments adequately covers this one as well. The petition does not make out a cause for relief under the "theft" theory or under the theory of failure to proceed against the collision insurance policy. It does show cause for relief under the

theory of failure to procure collision insurance and cannot therefore be dismissed.

## No. 439 (*Jones Note*)

 In this instance, the factual situation and the theories for relief resemble those in No. 76 with one important difference. Here, it is averred that, promptly upon learning of the wrecking of the automobile by collision, Goslee, by letter, requested the plaintiff to ask the insurance representative to call upon him for the purpose of assessing the damage. Exactly what occurred thereafter is not indicated, except for the statements that plaintiff did not comply with this request and did enter judgment against Goslee about a month afterwards, when it was too late to file a claim on the policy, if one existed. As in No. 76, it is not charged that there was any agreement, express or implied, on plaintiff's part to subordinate its right of recovery from the endorser to a recovery from the collateral, nor is it averred that plaintiff had any earlier knowledge than did petitioner of the damage to the car. No circumstances of unusual hardship to the endorser are shown; presumably, he could have paid the debt and proceeded against the insurance himself, if a policy existed. In short, assuming that there was an insurance policy, the only charge is that plaintiff failed to proceed against it. But the finance company was not absolutely bound to do so, even though he requested that action. It had the alternative right of looking to him and, upon payment by him, turning over the collateral. *Restatement, Security,* Section 131; 8 *Am. Jur.* 470. It would be idle to discuss the possible effect of any failure by the holder promptly to inform the endorser of its refusal to proceed against the collateral, for there is no charge here that there was any such failure on its part and I cannot assume it. This theory of the petition is, therefore, defective in that it does not clearly show the breach of any duty imposed by contract or law upon the holder.

On the other hand, as has been pointed out, if it be true

as alleged that the finance company failed to obtain insurance pursuant to its agreement, a cause of action is made out. For that reason the petition cannot be dismissed.