The **LIBERTY NATIONAL BANK AND TRUST COMPANY OF SAVANNAH,** Plaintiff,

v.

**INTERSTATE MOTEL DEVELOPERS, INC.,** et al., Defendants and Third-Party Plaintiffs,

v.

**AETNA CASUALTY AND SURETY COMPANY,** Third-Party Defendant.

*Civ. A. No. 2959.*

United States District Court,
S. D. Georgia,
Savannah Division.

Aug. 1, 1972.

John M. Tatum (Miller, Beckmann & Simpson), Savannah, Ga., for plaintiff.

Guy B. Scott, Jr., Athens, Ga., for defendants and third-party plaintiffs.

John W. Sognier, Kennedy & Sognier, Savannah, Ga., and Sidney F. Wheeler,

Long, Weinberg, Ansley & Wheeler, Atlanta, Ga., for third-party defendant.

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LAWRENCE, Chief Judge.

This suit was originally filed in the Orangeburg Division in South Carolina and was transferred to the Southern District of Georgia for convenience under 28 U.S.C.A. § 1404(a). The Liberty National Bank and Trust Company of Savannah seeks recovery from the defendant guarantors of the balance due on a promissory note executed by Keg 'N Kleaver of Savannah, Inc.[1] The loan in question enabled Keg 'N Kleaver to purchase restaurant equipment which was sold to the maker by Interstate Motel Developers, Inc., a South Carolina corporation. The note was "unconditionally" guaranteed by the defendants who arranged the loan with the Bank.

Plaintiff has moved for summary judgment on the pleadings, an affidavit, depositions and records of a foreclosure proceeding. There is no dispute as to the execution of the note or the signatures of the guarantors. It is conceded that the instrument is in default and that the Bank is a holder in good faith.

The loan was also secured by a bill of sale to secure debt dated November 4, 1970, and executed by Keg 'N Kleaver, Inc. It conveyed certain described furnishings and equipment to the Bank to secure the note indebtedness. The maker agreed in the security agreement to insure the equipment against fire. It was partially damaged by a fire that occurred on July 21, 1971. The defendants allege that the Bank was a loss payee under a policy written by Aetna Casualty and Surety Company and contend that it failed to take proper steps to collect the insurance and apply the proceeds to the extinguishment of the balance due on the note guaranteed by them. Guarantors set up the defense that the Bank's failure to realize on the fire insurance results in their discharge.

As a second defense defendants assert that they are discharged because the plaintiff Bank released to the maker of the note certain equipment which was part of the collateral without the knowledge of the guarantors. The President of Keg 'N Kleaver, Daniel Baitcher, testified on deposition that sometime after the loan was made some of the personal property (chairs and tables) was transferred to an Atlanta restaurant on a loan basis. The Bank learned about it and inquired as to the transfer. Its representative was informed by the President of Keg 'N Kleaver that the loan of the equipment was merely temporary. See his deposition, pp. 23–28; 30–31. There is no evidence to refute this admission.

Even if this were not so, there could be no *pro tanto* discharge under the circumstances. The Uniform Commercial Code provides that an instrument is discharged as to a party to the extent that "without his consent" the holder "unjustifiably impairs any collateral for the instrument given by or on behalf of . . . any person against whom he has a right of recourse." Ga.Code Ann. § 109A–3—606(b). In the instant agreement the guarantors "agree that the holder of said note . . . may from time to time and without notice surrender . . . all or any part of the Collateral. . . ." Advance consent to impairment of collateral may be given by a maker in the instrument. "Consent may be given in advance, and is commonly incorporated in the instrument . . . It requires no consideration, and operates as a waiver of the consenting party's right to claim his own discharge." Official Comment to Section 3—606 of the Uniform Commercial Code. See Reeves v. Hunnicutt, Executrix, et al., 119 Ga.App. 806, 168 S. E.2d 663. In that case the note provided that "the surrender or release of

---

[1] The note which is dated October 20, 1970, is in the amount of $42,350.25. At the time default was declared the principal and interest due was $29,874.95.

any collateral held by the payee or holder hereof, shall not affect the liability of any indorser, guarantor, surety or other party . . . or release or relieve them . . . from liability to pay the full amount of this note." The Court of Appeals ruled that under the terms of the instrument the defendant had consented to the release of the collateral and could not urge the defense of unjustifiable impairment of collateral as a ground for discharge.

The bill of sale to secure debt to the Bank on the equipment purchased by Keg 'N Kleaver provided that the grantor would keep the property "insured at its full insurable value against fire . . . payable to the grantee . . . with a long form loss payable clause. . . ." This security agreement was dated November 4, 1970.[2] At or about the time the loan was closed the borrower executed a form which stated that it would obtain fire coverage on the property. As attorney in fact, the Bank was to hold the original policy and make claims for loss. Apparently, no such policy was delivered to plaintiff.

On July 20, 1971, some eight and one-half months after execution and delivery of the bill of sale to secure debt, a binder was issued by Aetna Casualty and Surety Company upon the application of Keg 'N Kleaver for fire and extended coverage on the contents of the restaurant in the amount of $175,000 with a loss payable clause to Amerdyne Industries, Inc. The Bank was not named as a loss payee in the binder. The fire in question occurred the morning after the binder was delivered.

Subsequently, Aetna prepared a policy in accordance with the binder. The loss payable clause which was attached included the Bank as a loss payee in addition to Amerdyne Industries, Inc. Aet-

na claims that the policy was never issued or delivered. This is disputed by defendants. The insurance company cancelled the policy effective October 4, 1971. See Exhibit C to amendment filed by the defendants to their answer, July 12, 1972.

Whatever the obligations of the Bank may be as to Keg 'N Kleaver in respect to collection of the insurance loss, it certainly had no legal responsibility in that connection to the guarantors. Any failure as loss payee to pursue a claim against Aetna does not discharge the defendant guarantors in whole or in part. The fact that the maker of a note fails to resort to insurance collateral does not release an endorser. See Sussex Finance Co. v. Goslee, 46 Del. 242, 82 A.2d 743 (Supr.Ct.Del., 1951); 11 Am.Jur.2d § 956, p. 1108. "Payment guaranteed" or equivalent words means that the signer engages that if the instrument is not paid according to its tenor when due, he will pay it without resort by the holder to any other party. Ga.Code Ann. § 109A–3—416. See Sadler v. Kay, 120 Ga.App. 758, 172 S.E.2d 202 in which the rule is applied.

Keg 'N Kleaver has never filed a claim under the policy or brought a suit under it for loss of the property. The Bank filed a claim with Aetna and on July 20, 1972, just before the time was to run out for bringing a suit on the policy, it brought an action against Aetna as a third-party defendant, pursuant to Rule 14(a). The Bank claims an equitable lien in the insurance proceeds to the extent of the balance owing it on the note.[3]

The Bank has thus protected whatever interest it has as loss payee under the policy and, to that extent, any rights of

2. After the default on the note, the bill of sale to secure debt was foreclosed by the Bank and the property auctioned off by the Sheriff of the State Court of Chatham County to an agent of one of the guarantors for $10,100.

3. On February 28, 1972, the defendants brought in Aetna as a third party defendant, alleging that the Bank was a loss payee and that the insurer should be required to pay the loss so that the proceeds of the insurance may be applied to the reduction of the indebtedness.

Keg 'N Kleaver thereunder.[4] The guarantors cannot complain that any failure by the Bank to realize or attempt to realize on the insurance collateral has prejudiced them in any way. The pending third party action against Aetna by the Bank and its rights thereunder will enure to the benefit of the guarantors *after* they discharge their obligation as indemnitors. When they pay, they will be subrogated to whatever rights the Bank has against Aetna on the insurance policy. See 11 Am.Jur.2d Bills and Notes § 956, p. 1008; Restatement of the Law, Security § 141.

In studying this case I came across three decisions which require comment. In United States v. Fyles, D.C., 253 F. Supp. 386, there was an unconditional guarantee by defendants of secured loans evidenced by notes held by Small Business Administration. The insurance on the collateral had lapsed, a fact known to SBA but not to the guarantors. Subsequently, the mill and machinery which had been mortgaged by the principal as security burned. The holder of the notes brought suit against the guarantors. The District Court cited the common law rule that when a commercial lender has been notified of an insurance lapse it has a legal duty to pass on such information to its guarantors. Woodruff Motors, Inc. v. Commercial Credit Corp., 123 Vt. 404, 190 A.2d 705. Relying on Restatement of the Law, Security § 132, it concluded that the guarantors were discharged because the creditor had failed to take reasonable action to preserve the security when the surety had no opportunity to take such action.[5]

In *Woodruff Motors, supra,* the Vermont Court held that a creditor had the duty to use reasonable care to preserve the security and that it extended "to the insurance coverage as well as the automobile itself." The Court of Appeals of Georgia followed that holding in Evans v. American National Bank & Trust Company, 116 Ga.App. 468, 157 S.E.2d 816. There the defendant automobile dealer had guaranteed to the assignee Bank payment of the amount due on an installment sales contract. In previous dealings the dealer had been notified of insurance cancellations. In the particular instance the assignee did not notify the guarantor or make arrangements for other insurance. After the automobile was damaged in a collision the Bank brought suit on the guaranty. The Court of Appeals ruled that "the failure of the Bank, knowing the purchaser's insolvency, either to obtain insurance at the purchaser's expense or to notify the defendant of the cancellation, materially increased his risk and, to the extent of the insurance involved, discharged him from liability." The decision cites Ga. Code Ann. § 103–203 which deals with the discharge of sureties as a result of acts by the creditor increasing the risk, including non-insuring of the collateral. Armour Fertilizer Works v. Kenney, 161 Ga. 477, 131 S.E. 281; Seaboard Loan Corporation v. McCall, 61 Ga.App. 752, 7 S.E.2d 318.[6]

While no lapse of insurance is involved in the present case, there may have been a failure on the part of the Bank to make sure that the principal had insured the collateral with a loss payable clause in favor of the Bank.[7]

---

4. The guarantors claim that the loss amounted to $50,000.

5. In Sussex Finance Co. v. Goslee, *supra*, the Court cited the rule in Restatement in holding that breach of the agreement to obtain insurance on the collateral was the same as if the lender had surrendered the security without the consent of the endorser.

6. At the time Evans v. American National Bank, *supra*, was decided Ga.Code Ann. § 103–203 had been repealed and super-

seded by the Uniform Commercial Code. See Ga.Code Ann. §§ 109A–3—606; 109A–10—103. It is unnecessary to consider whether the "impairment of collateral" provision in the Commercial Code changes the previous rule in this State.

7. The security agreement provided that Keg 'N Kleaver would keep the property insured and that should it fail to do so the "Grantee at its option may procure such insurance and pay the premium and such advances shall be secured by the guar-

**892**

Why the latter failed to see to this is not disclosed. The guaranty agreement contained the following provision: "The Holder shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Holder takes such action for that purpose as the undersigned shall request in writing . . . and no failure of the Holder . . . to do any act with respect to preservation of the Collateral not so requested by the undersigned, shall be deemed a failure to exercise reasonable care in the custody or preservation of the Collateral." Possibly this language exonerates plaintiff of any failure to insure the collateral.

However, in the present state of the pleadings that is beside the point. The defenses raised by the guarantors are not founded upon any such theory. Their answer alleges that the personal property "was fully insured against loss by fire and other perils for the benefit of the plaintiff bank as the loss payee under the policy of insurance." Counsel for the defendants says that the Bank as attorney-in-fact for the borrower in connection with the insurance accepted a trust and responsibility and "It is this failure to act on their part that we are challenging on behalf of the defendants." I take this to mean plaintiff's failure to sue, not insure, and that is precisely what the answer alleges.

 The defendants have recently amended their answer by adding a count in tort. In seeking damages in the amount of $30,000 as the result of the failure to sue the insurer for the loss they allege they will suffer "in the event Liberty National Bank and Trust Company does not bring suit against Aetna Casualty and recover thereon on the loss . . ." The Bank has now brought such an action. But even if it had declined to bring suit on the insurance policy, defendants' counterclaim has no basis in law. Negligent failure to perform

a contractual duty which permits suit in tort presupposes the existence of an obligation to perform. See Frank Graham Company, Inc. v. Graham, 90 Ga.App. 840, 842, 84 S.E.2d 579; Monroe v. Guess, 41 Ga.App. 697, 154 S.E. 301. There was no duty on the Bank's part to sue the insurer. If there was one, it has fulfilled same. The amendment is disallowed.

There is no genuine issue of fact in this case. Under the unconditional guarantee of the note by the defendants they are jointly and severally liable to the Bank in the amount due by the maker. Plaintiff's motion for summary judgment is granted. Counsel will submit a form of judgment.

A few words more. Aetna has moved to dismiss the claims on the policy filed against it by the Bank and by the guarantors. The motion has not been argued. It will not be calendared at this time in the light of the fact that the grant of summary judgment may change the posture of this phase of the litigation.

---

antors that the Bank would undertake to obtain coverage. I will add that a guarantor has an insurable interest in the debtor's collateral. 44 C.J.S. Insurance

§ 183, p. 880; Hardeman v. Southern Home Insurance Company et al., 111 Ga. App. 638, 644, 142 S.E.2d 452; Ga.Code Ann. § 56–2405(2).